## ESTERLY & SON v. EPPELSHEIMER.

1. **Contract:** WRITTEN ORDER FOR MACHINE: FRAUD IN PROCURING: EVIDENCE OF ORAL CONTRACT. In an action on a written order for a harvester, for the price thereof, where the defense was fraud in procuring the defendant's signature to the order, *held* that it was competent for the defendant to show that the machine was delivered to him under an oral contract entirely different in its terms from the one sued on,—for the purpose of establishing his claim that the one sued on never became operative.

2. ——: ——: ——: SUBSEQUENT DECLARATION OF AGENTS. In such case, what plaintiffs' agents said, as well as what they did, while they were at defendant's place trying to make the machine work, after its failure, was competent, when offered by defendant, to show that they knew that the terms of the contract on which they had sold the machine were not those expressed in the contract sued on.

3. ——: ——: ——: ——: IMPEACHMENT. In this case, the fraud set up in defense was that K., plaintiffs' agent, procured the signature of defendant (who was unable to read English) to the contract sued on, by falsely representing its contents. K. was a witness for plaintiffs, and testified against the allegations of fraud set up by defendant. F., who was with K. when the signature was procured, and afterwards, was allowed to testify to declarations made by K. shortly after the transaction, in which K. admitted that he had misrepresented to defendant the terms of the contract in order to secure his signature. *Held* that this testimony was admissible as tending to impeach K. as a witness; and that, while K.'s attention should properly have

been been called to the conversation while he was on the stand, and before the impeaching testimony was offered, yet, as K. had a subsequent opportunity to deny and explain the conversation, it was a mere error as to the proper order of the testimony, without prejudice to plaintiffs, and therefore no ground for reversal.

4. **Instruction**: AS TO BURDEN OF PROOF: ERROR WITHOUT PREJU-DICE. In this case, though the signature to the contract sued on was not denied *under oath*, the court erroneously instructed that the burden was on plaintiffs to establish the genuineness of the signature. *Held* that it was harmless error, because the genuineness of the signature was not in issue, and the whole controversy was as to whether it had not been procured by fraud, and the whole scope of the instructions was to the same effect.

5. ———: ON THEORY NOT IN ISSUE: NO PREJUDICE. Action for the price of a machine which defendant claimed he bought upon an oral contract; but the action was upon a written contract, and the defense was that defendant's signature thereto had been obtained by fraud. The jury was properly instructed on the issue of fraud—the only issue in the case—but the court also gave an instruction based upon the contract under which defendant claimed to have bought the machine. *Held* that, as plaintiffs made no claim, and could not have recovered, under such contract, and as the jury specially found that defendant was not bound at all by the written contract sued on, the instruction was not prejudicial to plaintiffs.

6. ———: SPECIAL INTERROGATORIES: SUBMITTING ULTIMATE QUESTION. Where the action was on a written contract, and the defense was fraud in procuring defendant's signature thereto, and the controversy all through the trial was whether or not the defendant was bound by the contract in view of the alleged fraud, the court submitted the special interrogatory whether defendant was bound by the written contract, and the jury answered, "No." *Held* that, while the question and answer were nearly as broad as the general verdict, and the question should have been more specific, yet its submission under the circumstances was not reversible error.

*Appeal from Cass Circuit Court*—HON. J. P. CONNOR, Judge.

THURSDAY, OCTOBER 27.

THIS is an action to recover the contract price for a twine-binding harvester, which the plaintiffs claim they sold to the defendant. There was a trial by jury, and a verdict and judgment for the defendant. The plaintiffs appeal.

*Willard & Fletcher*, for appellants.

*R. G. Phelps*, for appellee.

ROTHROCK, J.—I. The action is founded upon a written contract for the purchase of the binder. This contract is in the form of an order purporting to be signed by the defendant, and directed to the plaintiffs at Whitewater, Wisconsin. The contract contains the following, among other provisions: " This machine is hereby purchased and sold subject to the terms and conditions of the following warranty and agreement: This machine is well made, of good material, and with proper management is capable of doing first-class work. The purchaser agrees to see that the machine is properly operated. The purchaser shall have one day to give it a fair trial, and, if it should not work well, he is to give written notice, stating wherein it fails, to the agent from whom it was received, and also to W. G. Leffingwell, general agent, at Kansas City, Missouri, and allow reasonable time to get to it, and remedy the defects, if any; the purchaser rendering necessary and friendly assistance, furnishing a suitable team; when, if it cannot be made to do good work, he shall return it to the place where received, free of charge, in as good condition as when received, except the natural wear, and a new machine will be given in its place, or the note and money will be refunded. Continued possession of the machine, or failure to give notice as above, shall be conclusive evidence that the machine fulfills the warranty. And no one has any authority to change this warranty in any manner."

The defendant averred, in substance, that his signature to the order for the machine was procured by the fraud of the agent for the plaintiffs; that said agent concealed important parts of said contract from the defendant, and procured his signature to the same by concealing its real provisions. The real issue presented to the jury, and upon which the right of recovery depended, was whether the written contract was void for fraud. And as the question is made in behalf of

the plaintiffs that the verdict finds no support in the evidence, we deem it sufficient to say that it appears to us that the jury was fully warranted in finding that the contract was void, and of no validity as a binding obligation upon the defendant. There is evidence to the effect that the defendant's signature was procured by the grossest fraud. It is not our purpose to set out this evidence. It is enough to say that an agent of the plaintiffs went to the defendant's house and procured the signature. The defendant is a German who can neither read nor write our language. The agent, after using his persuasive powers, as is usually done in such cases, and after an attempt by the defendant's son to read the order, but who could read but imperfectly, secured the signature by false representations as to the contents of the instrument. It would seem that, as the facts warranted a finding to this effect, it ought to have been an end of the plaintiffs' case, because the right to recover was based upon the written contract, and upon that alone. But the plaintiffs contend that the court committed grave errors in the course of the trial, by which the jury were led to return a verdict for the defendant. We will proceed to consider these alleged errors.

II. It was admitted on the trial that the plaintiffs' agent delivered a machine to the defendant. Indeed, the defendant

1. CONTRACT: written order for machine: fraud in procuring: evidence of oral contract.

set up in his answer that he contracted with plaintiffs' agent, one Yetzer, for a machine, and that if the same, after a fair trial during the season, did not work satisfactorily to the defendant, it might be returned; and that afterwards the plaintiffs fraudulently, and by misrepresentation, delivered to the minor son of the defendant another, different and inferior machine, of no value whatever; which machine, as soon as defendant discovered it to be worthless, and not the one purchased by him, he returned to the plaintiffs; and that, after the contract made with Yetzer, an agent of plaintiffs procured the order to be signed by the defendant by represent-

ing that it was merely an order for the machine already pur-chased by him, and that the order contained only the verbal contract previously made by him. The above, in substance, was the claim made by the defendant, by which he accounted for the possession of the machine. The plaintiffs objected to all evidence of the alleged oral contract with Yetzer, and now complain because such evidence was allowed to go to the jury. We think it is quite plain that such evidence was competent and proper. It was surely allowable for the defendant to show that no machine was ever delivered to him under the written order, or rather under the terms of the warranty contained in the written order, and evidence that the machine was delivered under an entirely different contract tended to sustain the claim that the written order never became operative as a contract.

III. After the machine was delivered to the defendant, the agents of the plaintiffs, and men in their employ, under-took to set it up, and make it work. There is a very decided preponderance of the evidence to the effect that their efforts were abortive. Either from defects in the machine, or on account of the incompe-tency of the agents, the machine proved to be a failure. The defendant worked with it in his harvest with great disadvan-tage, and by the use of it wasted his grain, and he finally hauled it back to where he received it, and left it. The plaintiffs' counsel objected to all conversations had with their agents while they were engaged in trying to make the machine work. This was all competent evidence. Upon the same principle, the plaintiffs could have ruled out all evidence as to the attempts to make the machine cut the defendant's grain. It was the right of the defendant to show, if he could, that he did not buy a machine under a warranty which required him to have but one day to try it, and, if it did not work well, to serve a written notice on the agent from whom he received it, and on some other individual at Kansas City, hundreds of miles from

<div class="margin-note">2. ——: ——: ——: subse-quent declara-tions of agents.</div>

his harvest fields, and give time to get to it, and remedy the defects. And the fact that the local agents were promptly on hand, without written notice, and made the attempt to make the machine work, was very strong evidence that they knew they did not sell a machine to the defendant upon the contract contained in the order; and it was just as competent to prove what they said as what they did. Their acts alone would have been unintelligible without the declarations accompanying the acts.

IV. All of the other objections to the evidence seem to us to be such as to demand no special consideration, excepting one. It is this: The man who was sent out to procure the defendant's signature to the order was named Kirkpatrick. He was accompanied by one Funk, who was a witness for the defendant as to the conduct of Kirkpatrick in procuring the signature to the order. After detailing the interview between the parties, the examination of the witness proceeded as follows: " *Question.* Did you have any talk with Kirkpatrick about the order after you left? *Answer.* Yes. *Q.* What did Kirkpatrick say was the reason that he didn't read the order to the old man, if anything, after you left?" Objected to by plaintiffs as immaterial, incompetent, and hearsay. Objection overruled by the court. Plaintiff excepts. "*A.* He says: 'By God! I got the old man fast. If he had known just everything in that order, I don't believe I could have got him to sign it.' We were then probably a mile to three-quarters of a mile from the old man's at the time, but he says: 'It will be all right; the old man will get a terrible good machine, and he will be well pleased with it.'" It is insisted that this evidence was erroneously admitted, because it was the mere declaration of an agent as to a past transaction. If Kirkpatrick had not been a witness in the case, the position of counsel would probably be correct. But Kirkpatrick was a most important witness for the plaintiffs, upon the question of the alleged fraud in procuring the defendant's signature

3. ——: ——:
impeachment.

An examination of the record shows that the plaintiffs could not have gone before the jury with any show of success without the testimony of Kirkpatrick. The testimony of Funk, of which complaint is made, was proper as impeaching Kirkpatrick, and it was impeaching evidence of the most damaging character. Kirkpatrick had been upon the witness stand, and examined to some extent, before Funk was examined. The plaintiffs called him as a witness in rebuttal, and he then denied any knowledge of the conversation or admission testified to by Funk. It must be conceded that it would have been better practice for the defendant to have called Kirkpatrick's attention to the conversation, giving time and place, before introducing the impeaching evidence. But we are not prepared to hold that the judgment should be reversed because of this departure from a rule of practice. The evidence was competent, although introduced out of time, and, with Kirkpatrick's subsequent opportunity of denial and explanation, the effect is precisely the same as if the regular order of procedure had been observed.

V. The plaintiffs complain of the following instruction given by the court to the jury: " This action is based upon a written contract for the purchase and sale of a twine-binding harvester, and the plaintiffs, in order to recover, must show by the evidence, first, that the defendant executed the contract in question." It is claimed that the burden is on the defendant to show that he did not sign the order or contract. This instruction was perhaps erroneous, because there was a mere formal denial of the signature of the instrument not under oath. But it was clearly error without prejudice. The signature to the contract was not a debatable question in the case. It was conceded all through the trial that the signature was genuine. The whole controversy hinged upon the question whether the signature was procured by fraud, and the whole scope of the instructions is to the same effect. This instruction cannot be said to be misleading, and no prejudice should be presumed from the fact that it was given.

4. INSTRUCTION: as to burden of proof: error without prejudice.

VI. Complaint is made of the eighth instruction given by the court to the jury. It was to the effect that, if the machine was not well made, of good material, and with proper management capable of doing first-class work, then the defendant had a right, after a fair trial had been given to the machine, to return it, and he would thereby be released from liability to the plaintiffs. This instruction need not have been given. It sets forth the rights of the defendant under the contract by which he claimed he purchased the machine. It was not preju_ dicial to the plaintiffs, because they made no claim to recover on such a contract. And the court expressly charged the jury that, if the defendant was not bound by the written contract, that is, if it was procured by fraud—the jury had no further duty to perform except to return a verdict for the defendant. And they were further instructed that, if the defendant was bound by the written contract, a recovery could not be defeated without giving the written notice of the failure of the machine to work, required by the written contract. The jury found in answer to a special interrogatory that the defendant was not bound by the written contract. It will thus be seen that the eighth instruction was not prejudicial to the plaintiffs, because they could in no event recover, except upon the written contract.

*5. ——: on theory not in issue: no prejudice.*

VII. It is further claimed that the court erred in submitting to the jury the interrogatory above referred to. It is insisted that it is a mere question of law. It is true, the question, with its answer, is nearly as general in its scope as the general verdict; and yet it seems to direct the minds of the jury to the very question in controversy all through the trial, and that is, whether or not the defendant was bound by the contract, in view of the alleged fraud in procuring his signature. The question might have been more specific, but we are not prepared to say that it was error to submit it to the jury.

*6. ——: special interrogatories: submitting ultimate question.*

AFFIRMED.