PROVIDENCE JEWELRY COMPANY, Appellant, v. S. FESSLER & SONS, Appellees.

**Sales on contract:** FRAUD: EVIDENCE. In a suit upon a written contract for the purchase of goods to which defendant pleaded that he never made a contract of absolute. purchase, and that his name to the paper was procured by the fraud and deceit of plaintiff's salesman, evidence as to the agent's authority to make commission contracts, and the custom of plaintiff in so doing, was irrelevant and immaterial.

**Principal and agent:** FRAUD OF AGENT: EFFECT. A principal can not enforce a contract procured by the fraud of his agent, regard-· less of the authority of the agent to make it, unless the party wronged is estopped from relying on the fraud.

**Contracts:** FRAUD: ESTOPPEL. A merchant who has been defrauded into signing a contract of absolute purchase of goods by false representations of the seller's agent that the same was a commission contract merely, and who, upon discovering the fact that the contract did not accord with the agreement, immediately and without unboxing the goods returned them to the seller, informing him generally of the claim of fraud, was not estopped from pleading the fraud in avoidance of the contract when performance was insisted upon by the seller.

**Oral evidence:** VARIANCE OF WRITING. The rule which excludes oral testimony of prior or contemporaneous agreements to vary the terms of a contract is not available -to prevent proof of an alleged fraud in the procurement of a contract:

**Contracts:** FRAUD: NEGLIGENCE: ESTOPPEL. Where an agent by trick and fraud substituted one form of contract for another, which was not in accord with the agreement of the parties, and by artifice hurriedly induced the execution of the same without an opportunity to examine it, the party defrauded is not, as matter

of law, guilty of such negligence as to preclude him from denying the validity of the contract in a suit thereon by the principal.

**Appeal:** FINDINGS OF FACT: PRESUMPTION AS TO CONCLUSIVENESS. 6 Where a cause is withdrawn from the jury on the motion of both parties and judgment entered by the court on the record made, it will be assumed on appeal that the issues of fact were decided against the plaintiff, and such decision will be given the effect of a verdict.

*Appeal from Calhoun District Court.*—HON. Z. A. CHURCH, Judge.

SATURDAY, DECEMBER 18, 1909.

ACTION at law to recover the purchase price of certain jewelry alleged to have been sold by plaintiff to defendants. Judgment for defendants, and plaintiff appeals.— *Affirmed.*

*E. A. Kennedy* and *M. W. Frick,* for appellant.

*E. C. Stevenson,* for appellees.

WEAVER, J.—Plaintiff brings his action upon an alleged written contract, the substance of which is that defendants thereby undertook to purchase from plaintiff a quantity of cheap jewelry at the aggregate invoice value of $263.60, subject to certain conditions, upon the happening or performance of which plaintiff would repurchase at the invoice price all the goods then remaining in defendants' hands. It also contained certain warranties and provisions for exchanging goods proving unsatisfactory and other matters having no direct bearing on the case before us. The defendants deny having made the contract sued upon. They admit they did sign a written order to the plaintiff for goods, but say that the signature of their firm to the writing in suit was obtained by trickery and fraud, and does not contain or set forth the order actually contem-

plated nor the contract agreed upon between themselves and plaintiff, which fraud, it is alleged, was perpetrated upon them by plaintiff's salesman, one Waggoner, in the manner hereinafter more particularly mentioned. By way of reply plaintiff alleges that Waggoner acted as its salesman on commission, having no authority to sell its goods on any other terms than such as are contained in the blank form on which the contract in suit is written; that in the order sued upon, which was submitted by Waggoner for plaintiff's approval, there was nothing to give it notice of the alleged fraud, and acting in good faith it approved the order as written, and shipped the goods to defendants on the terms therein expressed, and paid the commission thereon to Waggoner, who is insolvent and a nonresident, against whom no recovery of damages can be enforced; that defendants, though refusing to accept or pay for the goods, neglected to inform the plaintiff as to the matters now pleaded in the answer, except to deny having purchased the goods, and that the writing was not such as had been stated by the salesman; and that, by reason of defendants' failure to make full disclosure to plaintiff of the alleged fraud, plaintiff has been put to much trouble and incurred much expense which otherwise might have been avoided, and defendants are therefore estopped to insist upon such defense.

It is the claim of defendants, and there is evidence tending to establish it, that Waggoner, representing the plaintiff as a traveling salesman, came to the defendants, and proposed to put in their store a case of plaintiff's goods, for which defendants should assume no obligation except to keep them on display for sale, to advertise them by circulating advertising matter to be supplied by plaintiff, and to account to plaintiff once in three months for the wholesale price of such goods as they should be able to sell and dispose of at retail. In the course of such negotiation the salesman displayed a blank form of contract in consonance with the plan as proposed by him, which form

was pasted upon a piece of cardboard and used by him as a sample or exhibit of the terms which plaintiff desired to make with defendants. When the defendants had consented to the proposal, the salesman produced another blank form of the same general size and appearance, and, having filled it out, asked the member of the defendants to sign it, saying it was the same form of contract which he had exhibited upon the cardboard. The partner thus addressed having begun to look about for his spectacles which had been mislaid, the salesman expressed his desire to make haste to catch a train out of town, repeated his assertion that it was the contract agreed upon, and professed to read the material parts of it, using the language contained in the form first shown, and defendants, relying upon and believing these representations, signed the paper and the salesman left. A few days later a package of goods from plaintiff arrived at defendants' place of business, accompanied by a request for defendants to send their acceptances or promissory notes for the amount of the bill. Defendants at once returned the acceptances, refusing to execute the same, and denying that they had purchased the goods or assumed any such obligation. Failing to get any adjustment of the matter by correspondence, defendants returned to plaintiff by common carrier the package of goods unopened, refusing to use or accept the same except on the terms of their agreement with Waggoner. Plaintiff refused to accept the return of the goods, and, so far as the record shows, they are still in the possession of the carrier. The following propositions are argued by counsel.

I. The president of the company, having testified that Waggoner had no authority whatever to place the goods with defendants on a commission or agency basis, was asked whether "it has been customary at any time to place these goods with any of its customers on commission." Objection to this inquiry was sustained as being irrelevant and imma-

I. SALES ON CONTRACT: fraud: evidence.

terial, and this ruling is said to have been erroneous. We think not. We can not see upon what sound theory it could have been admitted. The defendants were neither alleging nor trying to prove anything about the customs observed in plaintiff's business. It was not even trying to show that Waggoner was vested with authority from plaintiff to put out its goods on commission. Its proposition was simply that Waggoner did agree to place the goods with them on commission, and, while professing to take their written agreement to that arrangement, he fraudulently tricked them into putting their names to a contract of purchase. If such were the case, then, without any regard to the nature or extent of the authority given the salesman, or the customs observed by the plaintiff in the conduct of its business, it was defendants' right, upon receipt of the goods and discovery of the fraud practiced upon them, to repudiate the contract so obtained, and refuse to receive the goods. For the purposes of this case it may be assumed that Waggoner could not bind the plaintiff by a commission contract such as defendants pleaded, and that had the writing accorded with his alleged agreement plaintiff would have been under no obligation to furnish the goods, but these are questions with which we are not now concerned. Plaintiff holds a contract by which defendants purport to purchase a bill of its goods. Defendants pleaded that they never made such a contract, never undertook to buy the goods, and that their names to the paper were procured by trick, fraud, and deceit. The issue thus presented is of a very simple character. Has the fact thus pleaded been sustained by the evidence? The excluded testimony could have afforded no aid in answering that inquiry. If defendants were endeavoring to enforce any obligation against plaintiff based on the agreement which they say they made with Waggoner, then the question as to the authority of the latter and the business customs of the plaintiff might possibly have some pertinence, and Smith v. Clark, 12 Iowa,

32, and other authorities cited by appellant would perhaps be applicable. As it is they are not in point.

Whatever may have been the authority or want of authority in Waggoner, there is no principle of law by which the company, as his principal or employer, may enforce for its own benefit a contract procured by his fraud, unless the party so imposed upon has in some way estopped himself from pleading or insisting upon the defense.

2. PRINCIPAL AND AGENT: fraud of agent: effect.

II. Nor do we think the estoppel pleaded by plaintiff has any support in the testimony. Immediately upon learning that plaintiff was treating the transaction as a sale, defendants, without opening or appropriating the shipment, denied having bought the goods, and insisted that they were to be furnished on commission only, and also informed the plaintiff that the writing obtained from them did not accord with their agreement or with the terms as read to them by the salesman, and, upon plaintiff's refusal to listen to their protest, they returned the unbroken package. It is true that they did not go so minutely into their version of the fraud as they did upon the witness stand, but plaintiff did not ask nor did it seem to desire any further information. On the contrary, it planted itself from the outset upon the writing which Wagoner had procured, and insisted upon the performance of its terms. It seems to have adopted the legal theory of Shakespeare's famous character who thought it a sufficient answer to all protests against his demand to point to the paper, and insist that it was "so nominated in the bond," when the real question was not so much what the bond contained as how it was procured. We see no evidence in the record that plaintiff was misled to its injury by any act or omission on defendants' part, and, as it had the burden of establishing the alleged estoppel, the plea must fail.

3. CONTRACTS: fraud: estoppel.

III. Counsel seem to think that the elementary rule

which excludes oral testimony of prior or contemporaneous
negotiations to vary the terms of a written contract is

4. ORAL EVIDENCE: variance of writing. .

available to the plaintiff in this case. Cer-
tainly it needs no citation of authorities to
sustain the proposition that this rule is never
employed to prevent proof of an alleged fraud in the pro-
curement of the writing. *Officer v. Howe,* 32 Iowa, 142;
*Hopkins v. Ins. Co.,* 57 Iowa, 203; *Rohrbacker v. Ware,*
37 Iowa, 85; *Esterley v. Eppelsheimer,* 73 Iowa, 260.

It is urged, however, that defendants were at least neg-
ligent in signing the writing prepared by Waggoner, and
therefore can not be heard to deny its obligation. As be-

5. CONTRACTS: fraud: negli-
gence: estop-
pel.

tween the perpetrator of a fraud or his prin-
cipal who seeks to profit by it on the one
hand and the defending party on the other
the rule here contended for is one which does not appeal
to an enlightened sense of justice. Cases may be found in
which it has been recognized, and cases may at times arise,
the equities of which will not be violated by its application,
but we are not disposed to enlarge the scope of a rule which
permits a party to say, in effect, "I admit that the contract
sued upon was procured by my fraud and misrepresentation
or by the trick or fraud of my agent, nevertheless you were
too easy a mark; you should not have believed me; you
should have been on guard for the trap I set for your feet;
and therefore the law will effectuate my fraud by enforcing
against you a contract to which your mind never gave its as-
sent." This court has never given its assent to that doctrine,
nor has it any inclination now to do so. There is justice in
holding, as some of our cases do, that where no artifice
is employed to prevent the party who signs a contract from
knowing its terms, and he has fair opportunity to read and
examine it he can not be allowed to say that he did not
understand its terms. But the case before us does not
come within that description. If defendants are truthful,
Waggoner, by a trick, substituted one form of contract for

another, hurried defendants into signing it, then hastened away, and while more suspicious or more careful, persons might have insisted upon careful personal inspection of the paper, before affixing their names to it, we can not say as a matter of law they were negligent in not doing so, even if their negligence were a matter of which plaintiff could take advantage.

The cause was withdrawn from the jury on motion of both parties, and judgment entered by the court on the record as made. We must therefore assume that the issues of fact were all decided against the contention of the plaintiff, and, as such findings have the effect of a jury verdict, we can not disturb them. The case does not differ in principle from that of *Jewelry Co. v. Darnell,* 135 Iowa, 555, and upon the doctrine of that precedent, and of the cases therein cited, there is no reversible error in the record before us.

6. APPEAL: findings of fact: presumption as to conclusiveness.

Other questions argued are governed by the conclusions already announced, or do not properly arise upon the record, and the judgment appealed from is therefore *affirmed.*