The Pictorial Review Company, Appellant, v. Gerald Fitz · Gibbon & Son et al., Appellees.

Sales: FALSE REPRESENTATIONS: EVIDENCE. Under the evidence in
1    this action the question of whether the defendants were induced
to execute a contract for the purchase of goods by the false
representations of plaintiff's agent was for the jury.

Same: EXECUTION OF CONTRACT: NEGLIGENCE: FRAUD. The rule
2    that a party signing an instrument without exercising any care
to ascertain its contents may not be heard to say he did not know
or understand its effect is not applicable, where his signature was
obtained by trick or artifice, and where, within a reasonable time
after discovering the fraud he rescinds the agreement and restores,
or offers to restore, whatever he received therefor; and the fact
that the instrument recites that it was signed after being read
will not change the legal effect of the situation.

Admission of evidence: DEPOSITIONS: DISCRETION: PREJUDICE. Where
3    the plaintiff read in evidence only a portion of the deposition of
one of its witnesses, it was not an abuse of discretion to permit
defendant to read the omitted parts to the jury during the presenta-
tion of plaintiff's case, although. the better practice would have
been to permit defendant to read the omitted portions during pres-
entation of the defense. The order in which the deposition was
offered was not prejudicial, as the omitted portions were clearly
admissible, and were later offered in rebuttal by plaintiff.

Offer of judgment: COSTS. An offer of defendant to allow plaintiff to
4    take judgment for the amount of goods sold by him to the time of
rescission of the contract of purchase, and for costs of suit, was
not an offer of judgment under the provisions of the statute, but
was more in the nature of an admission or tender.

Sales: RESCISSION: LACHES. Where a merchant was induced to make
5    a contract for the purchase of goods on the representation of
defendant's agent that he would only be required to pay for goods
actually sold, and he did not know that the contract provided other-
wise until some time later, when plaintiff demanded pay for all
the goods, his rescission and offer to then pay for the goods sold

and to return the balance was not unreasonably delayed, as a matter of law, where a verdict was returned for the precise amount of defendant's offer, but judgment was subsequently entered for that amount with interest from the date of the verdict.

Costs:  OFFER OF JUDGMENT:  AMOUNT OF VERDICT. .A judgment should be treated as entered when the verdict was returned; and although a judgment entered some time after the return of a verdict for the precise amount of defendant's offer provided for interest from the date of the verdict, and with interest added would exceed the amount of the offer, that fact would not affect the taxation of costs.

*Appeal from Woodbury District Court.*—HON. WM. HUTCHINSON, Judge.

FRIDAY, FEBRUARY 13, 1914.

ACTION at law to recover for goods alleged to have been sold to the defendants. On trial to a jury there was a verdict and judgment for plaintiff for $60. On the theory that such recovery is inadequate, the plaintiff appeals.—*Affirmed.*

*Carter, Brackney & Carter,* for appellant.

*Griffin & Page,* for appellees.

WEAVER, J.—The petition, which was filed March 10, 1910, sets out an alleged written contract with the defendants, whereby defendants ordered and agreed to pay for certain "fashion sheets" to be delivered in monthly parts, or in installments covering a period of five years unless sooner revoked upon giving a stipulated notice. Plaintiff says that upon the terms of said writing it sold and delivered to defendants goods to the amount of $98.74, and that said sum of $98.74, with interest thereon from November 30, 1909, is due and unpaid. The demand for judgment is in the following form: "Wherefore plaintiff demands judgment against the defendants for the sum of $98.74, with interest thereon according to law, and for the costs of this action." Answer-

ing the petition, defendants plead that the contract sued upon was obtained by fraud and misrepresentation, allege that they had rescinded said agreement, and had offered and tendered to plaintiff the full amount due for the goods actually used or sold by them, together with a return of the unsold goods, and as a part of their answer offered to allow plaintiff to take judgment against them for $60 and for all costs accrued up to the time of such offer. This offer not being accepted, the cause went to trial on April 15, 1912. A verdict for plaintiff for $60 was returned April 16, 1912. Plaintiff's motion for new trial was denied May 27, 1912, and on the same day judgment was rendered on the verdict. Plaintiff's appeal from said judgment was perfected on November 20, 1912, and the bill of exceptions was certified and filed on the same day.

Appellant has included in its abstract what purports to be an amendment to its petition filed in April, 1913, long after the appeal was taken, increasing its demand for judgment to $287.74, but it is so obviously unauthorized that we think it cannot be regarded as affecting the issues as they stood at the time of the trial. It is to be said, however, that our conclusion hereinafter announced upon the merits of the case renders the question of the time and effect of filing the amendment quite immaterial.

I. It is quite obvious that upon the face of the printed record the amount in controversy, as shown by the pleadings, is less than $100, and, there being no certificate for the allowance of an appeal, there is grave doubt whether this court has any jurisdiction of the subject-matter, but in view of the fact that such objection is not made or argued in the briefs, and the possibility that the apparent defect in the record may be attributed to an error of the printer or proofreader, and the further fact that we think the appeal cannot be sustained on the merits we shall proceed to consider it as if the showing of jurisdiction were unquestionable.

II. The defendants, father and son, are partners in business. The contract in suit was signed by the son in

the firm name; the father not being present. It is the claim of the defense, and there is evidence from which the jury could find, that plaintiff's representative called at defendant's place of

1. Sales: false representations: evidence.

business and solicited an order for its goods, but the young man expressed himself to be unwilling to enter into any contract until he had opportunity to consult his father concerning it. Plaintiff's agent had prepared a written order or contract to which he had desired the firm's signature, saying and representing that it provided only for payment by defendants for such of the goods ordered as they might be able to sell, and for the privilege of returning all goods left unsold, but the said junior partner, being busy attending to customers, did not read the instrument and repeated his statement that, before binding the firm by an agreement, he wished to talk with his father about it, thereupon the agent, expressing a desire to leave town upon the next train, told plaintiff that if he would sign the paper without then taking time to make the examination, he could examine it later, and if found to be otherwise than as represented by him, the contract might be treated as of no effect. Upon this representation defendants say the paper was signed, relying upon the agreement and assurance of the agent. Some time thereafter, and after certain goods described in the order had been delivered, defendants discovered that the contract was not as represented, and that it provided for an absolute sale of the patterns, and for payment therefor without regard to sales by them to their customers, and that upon such discovery they at once refused to be bound by said contract, and offered to pay for the goods sold and return those unsold. The agent, as a witness for the plaintiff, denies making the alleged false representations. He admits, however, that the younger partner expressed his desire to consult his father before signing the contract, but claims that time was in fact taken for that purpose while he was still there. He further concedes that after he had prepared the paper

ready for signature the son again requested time to submit it to his father, but the agent responded that as the father had 'already been consulted and the son's time was being taken up by customers, and he (the agent) must leave on the train, it was necessary to close the transaction then if at all, upon which, after reading over the instrument, the young man subscribed it with the name of the firm. Upon the questions of the alleged false representations there is a sharp conflict in the testimony. Without further extending this opinion to set out the evidence of the witnesses, we have to say that we think the question whether false representations were made as alleged in the answer, and whether, if made, defendant relied thereon in signing the contract, was clearly one for the jury.

III. Appellant relies largely upon that class of precedents in which it is held that a person may not sign a written instrument without exercising any care to know what it contains and then escape an obligation so assumed on the plea that he did not know or misunderstood the effect of such writing.

2. SAME: execution of contract: negligence: fraud.

But this rule is not intended to make easy any scheme of fraud or deception, and if the evidence tends to show that the party who obtained the paper misrepresented its contents, and by trick or artifice induced the other party to sign it without reading it for himself, the wrongdoer will not be permitted to retain any advantage so gained if the person injured, acting within reasonable time after the discovery of the fraud, rescinds the agreement and restores, or offers to restore, whatever he has received thereunder. In its essential features this case is quite like *Jewelry Co. v. Fessler*, 145 Iowa, 74, where plaintiff's agent, under representations that the contract he sought was one for consignment on commission only, obtained a merchant's signature to a contract for an absolute purchase, avoiding the reading of the paper on the plea that he must leave on a train then nearly due. We there refused to hold as a matter of law that the defend-

ant was estopped by his negligence from setting up the defense of fraud. We find nothing in this record which prevents the application of the rule affirmed in the cited precedent.

The fact to which our attention is called, that the written contract closes with the words, "Signed in duplicate after being read," in no manner changes the legal effect of the situation. Defendant swears that he did not read it, and that he was induced to sign it without reading it by deception and fraud and artifice on the agent's part and if this was so, there is no presumption that he knew these words were in the instrument, and it was for the jury to say what weight and value should be accorded to the testimony. It is not a rare thing to find that a writing charged to have been fraudulently procured contains declarations or statements that the party has read and understands all its contents, and that no representations or promises have been made to him except as shown by the writing, but it has never been held that such provisions are of themselves sufficient to estop him from pleading and proving a fraud practiced upon him. Indeed such unusual precaution in drawing a contract may sometimes justify suspicion of the good faith of the party preparing it.

IV. The plaintiff took the deposition of its representative who procured the contract from defendants. On the trial and in presenting its main case its counsel read to the jury only a part of such deposition. Thereupon, over plaintiff's objection, defendants were permitted to read the remainder to the jury, such remaining part being the statements of the witness which in some respects apparently tended to corroborate the story of defendant as to what took place at the time the paper was signed. Later, and in presenting its rebuttal, plaintiff also read to the jury the same matter which had previously been read by the defendants' counsel, as above stated. Error is assigned upon the ruling by which defendants were permitted to place such mat-

3. ADMISSION OF EVIDENCE: depositions: discretion: prejudice.

ter before the jury pending the presentation of plaintiff's case. We are inclined to the view that, while it was the right of the defendants to give the remainder of the deposition to the jury, the better and more orderly method would have been to withhold it until after plaintiff had rested. It was plaintiff's right to present its case in its own way. It could properly read to the jury a part only of the deposition, provided that the part offered is all the witnesses' testimony relating to some material fact or issue. The opposing party in such case may then introduce the omitted portions. Ordinarily the better practice would be to require the opposing party to withhold such reading until its turn comes to be heard. But the order of presentation of evidence is so much a matter of discretion on the part of the trial court that its ruling in that respect will not be interfered with except where prejudice to the complaining party is made clearly to appear. Plaintiff does not complain that the deposition was inadmissible, indeed it offered the very matter to the jury in its own behalf, and we are of the opinion that no prejudice could have resulted from the fact that it had once before been read out of its proper or natural order.

V. Some attention is given in argument to a provision in the contract relating to liquidated damages. In view of the issues presented and the finding of the jury we regard the question whether the contract does or does not provide for liquidated damages as of no materiality. The verdict returned could have been arrived at only on the theory that the defense of fraud had been established, and, such finding being made, there was nothing to which the rule or provision concerning liquidated damages could have any proper application.

VI. It is argued also that the offer of judgment in defendant's answer is not such an offer as is contemplated in Code, sections, 3818, 3819. This may be conceded without. 4. OFFER OF JUDG- finding any error in the record. The offer, MENT: costs. was rather in the nature of an admission of the defendants' indebtedness to the amount stated, and of

plaintiff's right to a judgment to that extent. It was also, in substance, a plea of tender, and was so treated by the court, which instructed the jury that plaintiff was, in any event, entitled to recover the sum so offered. Under statutory offer of judgment, the jury may, if the evidence warrants, find a general verdict for defendant, or a verdict for plaintiff in any sum more or less than the offer, and in either case the effect, if any, of such offer is upon the matter of taxation of costs alone. The matter complained of was evidently not intended as an offer of judgment under the statute referred to, nor was it treated by the court as having any such effect.

VII. It is still further argued that the defendants' delay in attempting to rescind the contract was such the court ought to have denied the right of rescission as a matter of law. We cannot so hold. The defendants do not appear to have been aware that plaintiff would attempt to hold them to any other or different terms than were mentioned in their negotiations until some three or four months after the paper was signed, when it presented its bill on the theory of an absolute sale of the goods which had been shipped. Immediately on discovering this attitude of the plaintiff they refused to proceed farther with the deal, and offered to return the unused goods and pay for those disposed of. The delay was not so clearly unreasonable as to justify the court in taking its consideration from the jury.

5. SALES: rescission: laches.

VIII. Finally it appears that the verdict of the jury for $60 was returned on April 17, 1912, and in rendering judgment thereon on May 27, 1912, the recovery was stated to be the sum of $60, with interest from the rendition of the verdict, and for only those costs which accrued before the tender was made. Counsel insist that, to the extent of the interest thus provided for from the date of the verdict to the date of the judgment entry, the judgment is more than the offer, and all the costs

6. COSTS: offer of judgment: amount of verdict.

should have therefore been taxed to the defendants. The point is not well taken. The judgment is in substance and effect precisely as if it had been entered promptly on return of the verdict and for its exact amount. It is to be presumed that the jury found that, including interest, defendants' indebtedness to the plaintiff did not exceed $60. But for the instruction given the verdict might possibly have been for a materially less sum than the offer. Had judgment been entered promptly on the verdict, it would have been for the principal sum of $60 only, and plaintiff would have acquired the right of interest thereon from that date until paid. The judgment entry having been delayed, the court preserved the plaintiff's right in this respect by providing for interest from the time when its right to a judgment matured. It would appear that, by filing and urging its motion for new trial, plaintiff itself induced the delay in entering judgment on the verdict, and it would be a most peculiar rule which would enable it to escape the taxation of costs for which it would otherwise be chargeable by pointing to an item of a few cents interest, which accumulated pending a ruling upon its own contention that verdict should be set aside.

Other points made in argument are controlled by those already discussed, and require no further consideration.

There is no error in the record necessitating a new trial, and the judgment of the district court is therefore *Affirmed*.

LADD, C. J., and EVANS and PRESTON, JJ., concur.