INTERNATIONAL TRANSPORTATION ASSOCIATION, Appellant, v.
ATLANTIC CANNING COMPANY, Appellee.

No. 41461.

JUNE 20, 1933.

Swan, Martin & Martin, and E. A. Lingenfelter, for appellant.

Tom C. Smith, for appellee.

DONEGAN, J.—In this case the plaintiff brought action to recover the sum of $200 upon a written contract providing for the publication of certain advertising matter of defendant in a book published by plaintiff known as Baedeker's International Trade Developer. Defendant admitted signing the instrument, but alleged that he was tricked and deceived by plaintiff's fraud and artifice into signing this instrument without reading it, under the impression that he was signing a request by plaintiff for information instead of signing a contract.

On and prior to the time herein involved, the appellee, a corporation, owned and operated a corn and pumpkin canning factory in the city of Atlantic, Iowa. This factory had been operated for more than forty years under the management of one Cuykendall. Some time in the early part of June, 1929, appellee received by mail an envelope containing a form letter and another sheet of paper the

contents of which are hereinafter described. These papers were so folded and inclosed in the envelope that when withdrawn and unfolded the letter was on top and the other paper was underneath. The letter was a printed form letter having the appearance of typewriting. In the upper third of the sheet upon which the letter was contained was a cut of a card index file. From this card index file a curved arrow pointed to the left to a blocked out square space in which appeared the word "data" in writing. Beneath this blocked out square space appeared the following: "O. K. (with corrections if any)". Beneath the illustration of the card index and the blocked out space (in print resembling typewriting) was the following:

"This is the way we have your activity recorded on our 'card index' and from which we propose to make up selected data for listing of American producers and distributors of merchandise in the next (1930) issue of *Baedeker's International Trade Developer* to be published early this Fall.

"If you wish to be listed therein, please O. K. the above (with any necessary changes noted thereon) and return promptly—for this service we thank you in advance."

Underneath this was a blank line, and underneath the blank line was further printed matter descriptive of Baedeker's International Trade Developer. The last paragraph of this letter was as follows:

"If you desire your activity specially advertised in this reference work, telling our readers what you buy and sell, also from whom you invite correspondence, the opportunity is yours to read and accept 'our offer' herewith enclosed, returning the same promptly to insure its arrival in time for publication."

The second sheet was slightly larger than the letter. In the upper left-hand corner of this sheet were printed the words, "International Transportation Association's Advertising Order Form 30-C". Underneath these words, in the upper left-hand corner, and occupying about one-third of the width and length of the sheet, was an illustration of a book which bore the title "Baedeker's International Trade Developer and Book of Commerce". Upon the right side at the top of this sheet appeared the words, " 'Before you Invest— Investigate' for when accepted 'a contract is a contract' ". Beneath this motto and also occupying about one-third of the width and

length of the sheet, in the upper right-hand side was a blocked out space approximately three inches long and two inches wide which contained in small type the following printed matter:

"The International Transportation Association offers to prepare and publish in future editions of their Trade Developer an announcement for the undersigned to occupy approximately eight square inches, made up from acceptable data furnished below. The agreed price for this publicity is One Hundred ($100.00) Dollars—U. S. Currency—a year payable by the advertiser to the International Transportation Association, its assignees or successors, on delivery of one copy of each year's edition containing this service, with bill and copy of our accepted offer attached thereto. Also that this order is for the editions of 1930-1931 and thereafter, but if received too late for the 1930 edition then for the 1931-1932 editions. In either event, this order shall continue in force for subsequent annual editions until cancelled by registered notice from the advertiser and delivered before January 1st preceding date of subsequent editions.

"Typographical errors in this advertising service to be limited to 25 per cent of the year's charges as maximum damages. All conditions of this offer are recorded hereon, and its acceptance constitutes a complete, irrevocable contract for the first two operative years because of the 20 per cent reduction off the one-year rate."

Between the illustration of the book and the blocked out space containing the printed matter above quoted, and in the middle of the upper portion of the sheet, appeared an arrow pointing to the right side of the sheet containing this blocked out printed matter. The shaft of this arrow contained in printing the words "Here is our offer". Beneath this arrow, printed in large type, were the words, "For special representation in Baedeker's International Trade Developer annual reference work of the International Transportation Association, Transportation Building, Washington, D. C. United States of America".

The above-described matters occupied approximately one-third of the entire length of the sheet. Underneath the matters set out in this upper one-third of the sheet appeared in two lines in small-sized type the following:

"The undersigned has read and accepts the offer to prepare from the data furnished herewith an announcement, descriptive of our activity (to conform with publisher's requirements, space available,

·also style of publication) and ·publish the same in future issues of their (then in a third line in large type and occupying practically the width of the sheet, the words) Baedeker's International Trade Developer".

Underneath the above, on six separate lines widely spaced, appeared what may be· referred to as the questionnaire. The first part of each of these six lines contained in printing a few words indicating the information or data to be filled in on the balance of the line. The latter part of each line contained this information or data in typewriting. Beneath the above printed and typewritten matter appeared four other lines, also widely spaced, containing in printing suggestions for further data, but to which no data had been added. Following this and occupying approximately the right half of the sheet appeared in typewriting the words "Atlantic Canning Company". Underneath this appeared a dotted line preceded by the word "By", and on the top of this dotted line appeared in handwriting the name ."J. W. Cuykendall", followed in typewriting by the abbreviation "Pres." On the left side of the sheet, approximately opposite the signature on the right side, were two dotted lines. The first of these lines was preceded by the words in printing "City and State", and on the dotted line itself· in typewriting appeared the words "Atlantic, Iowa". The second dotted line was preceded in printing by the word "Date". On the dotted line itself appeared in typewriting the words "June 5th", and at the end· of the line appeared in figures "1929", the first three of the figures being in printing and the last figure "9" in typewriting.

Cuykendall, the president and manager of defendant-appellee, stated as a witness that he had been managing the business in question for more than forty years; that during all of that time the defendant had never used any of the advertising mediums such as the publication involved in the contract, for the reason that the business of the defendant was such that advertising was of no benefit to it; and that it was a common practice for trade publications to request data from concerns in the canning business. He further stated that ·when the envelope containing the form letter and the second sheet containing appellant's offer were received, the form letter was on top and the other sheet on the bottom; that all the typewritten matter on this sheet was already on it when it was received by him; that he did not see and did not read the blocked out offer in the right-

hand upper corner and did not see the arrow pointing to said offer; that when he signed his name on the dotted line at the bottom of the page he had no intention of signing a contract and thought he was merely giving information concerning the canning business. Appellee in argument alleges that in using the two sheets, the form letter which referred to data and the second sheet which included data in reference to defendant's business, in placing these two papers in the same envelope with the form letter referring to data on top and the other sheet containing the questionnaire and the data itself in the lower two-thirds of this sheet, where it would immediately meet the eye when the form letter was lifted up; and in printing the offer in small type in the right-hand upper corner and in the two lines preceding the main portion of the sheet which included the data, the appellant deliberately and intentionally planned to mislead appellee into signing on the dotted line at the bottom, under the impression that appellee was furnishing the data mentioned in the form letter, without knowing that by so doing a contract was being entered into. This, the appellee claims, constituted fraud on the part of appellant.

The trial court found for the defendant, and the findings of that court on questions of fact cannot be set aside by this court. The only question for our determination is whether the finding of the trial court is sustained by sufficient evidence. It is admitted in this case that the paper constituting the contract was signed by the defendant's president and manager, and no question is involved as to his authority to sign such a contract. It is also undisputed in this case that no false representation of any kind was made by the appellant to appellee in express terms, and that the fraud, if any, here involved, must be found in the letter and sheet containing appellant's offer, in the arrangement of their contents, the type of printing used, and the manner in which they were folded and enclosed in the envelope. It is a general rule of law recognized by the courts of this and other jurisdictions that one who signs a written instrument without reading it is bound thereby, and will be precluded by his own negligence from claiming that he did not know its contents. Midland Mortgage Company v. Rice, 197 Iowa 711, 198 N. W. 24; Houchin v. Auracher, 194 Iowa 606, 190 N. W. 3; Garner v. Johns, 182 Iowa 684, 166 N. W. 11. It is equally well established, however, that if a person is induced to sign an instrument without reading it, through some trick or artifice or false representation on the

part of another, he will not be estopped to deny the validity of the instrument to which his signature was thus procured. Providence Jewelry Co. v. Fessler & Sons, 145 Iowa 74, 123 N. W. 957; Pictorial Review Co. v. Fitz Gibbon & Son, 163 Iowa 644, 145 N. W. 315; Sutton v. Greiner, 177 Iowa 532, 159 N. W. 268.

We have here, however, a case in which no false representation was expressly made by the plaintiff as to the contents of the contract. The fraud, if any, existing in this case consisted of the stratagem or trick or device by which defendant was induced to sign the contract without reading it. While the principles underlying the law of fraud are well established, the precedents involving grounds of fraud similar to those claimed by the appellee in this case seem to be comparatively new. Our attention has been called to only four cases involving somewhat similar facts. These cases are: International Transportation Association v. Ford Transfer & Storage Co., decided by the Nebraska Supreme Court Commission Division, and not officially reported; International Transportation Association v. Bylenga et al., 254 Mich. 236, 236 N. W. 771, 772; Otto Baedeker & Associates, Inc., v. Hamtramck State Bank, 257 Mich. 435, 241 N. W. 249, 250; and Publication Division of International Transportation Association v. Blakeslee, 225 App. Div. 229, 232 N. Y. S. 508. In the first two and the last one of these cases the plaintiff appears to be the same as in the case now before us, and in all of these cases the document containing the offer seems to have been arranged in practically the same form as that in this case. The first three of these cases were decided in favor of the defendants, and in each case the alleged contract was held to be invalid because of the fraud used by plaintiff in procuring it. In its decision the Nebraska court used this language:

"It is clear to me that the manner and style of the arrangement of the printed matter, and the position of the so-called offer in the box in the upper right corner of Exhibit 3 (instead of embodying it in the lower part of the paper) was a scheme, and, while this may sound somewhat harsh, it is nevertheless true, was a scheme designed to influence the defendant into believing that by signing that paper he would be merely submitting requested information as he had done on many previous occasions."

In International Transportation Association v. Bylenga, supra, the following language is used:

"The question presented is whether the communication sent to defendants was designedly prepared by the plaintiff in such a manner as to cause an ordinary business man to affix his signature in the place indicated for it without reading the boxed-in printed matter in the upper corner thereof. In our opinion this question should be answered in the affirmative."

In Baedeker & Associates v. Hamtramck State Bank, supra, it is said:

"The form of contract does not render the testimony of defendant's witnesses incredible. The instrument undoubtedly expresses the obligation to pay in such manner that it would be recognized by an ordinarily intelligent person who will take the time to read the instrument. In fact, it is evident that one would need to be careless to fail to appreciate the obligation. On the other hand, the general aspect of the instrument, the stating of the offer in small type, the separation of the acceptance from the offer, the blocking of advertising matter in the form, the circuity of the language, the inclusion in the contract of a questionnaire associated by the trade with free representation and which covers more than one-half of the sheet, make up an instrument in which the obligation to pay does not stand out and it cannot be said, as a matter of law, that a busy person, accustomed to receiving inquiries of the same general form, would not be deceived by it into signing without reading. * * * That plaintiff intentionally prepared its proposition in a form similar to other forms of questionnaires for information, with the expectation that a proportion of bankers would be deceived by it and would sign as a matter of routine, without reading, and under the impression that the instrument was an ordinary free listing form. In other words, the jury could find that the plaintiff fraudulently intended to 'capitalize carelessness', or, as the circuit judge put it, 'to entrap the unwary'. The testimony would also justify the jury in finding that, although careless, defendant was deceived by plaintiff's trick into executing the instrument without reading it and, therefore, that the minds of the parties did not meet on a contract. Carelessness of the party defrauded is not a defense to intentional fraud. Schupp v. Davey Tree Expert Co., 235 Mich. 268, 209 N. W. 85. We think the testimony properly presented a question for the jury under the Bylenga case—that one may be excused from reading a contract form 'when the neglect to read is not due to carelessness alone, but

was induced by some stratagem, trick or artifice on the part of the one seeking to enforce the contract'."

In the case of Publication Division of International Transportation Association v. Blakeslee, 225 App. Div. 229, 232 N. Y. S. 508, 510, referred to in both appellant's and appellee's briefs and arguments, the decision of the court was in favor of the validity of the contract. There are several things, however, which distinguish that case from the three cases relied upon by appellee herein. In that case no fraud was pleaded by the defendants, the only defense being that the offer was not a part of the contract. In that case the data was filled in in the blank spaces upon the sheet upon which the contract was contained by the defendant. The court held that the data thus supplied was such that the defendant must have read the offer, "for it is only upon reading the offer that the defendant could have acquired sufficient information to fill in the blank spaces and complete the contract accepting the offer made by the plaintiff." So far as the opinion shows, there was no evidence in that case that the offer was not read by the defendant, and the court states it as its opinion that "the offer was accepted by the defendant with full knowledge of its terms".

In the case of Providence Jewelry Co. v. Fessler & Sons, 145 Iowa 74, 123 N. W. 957, 959, this court refused to follow the rule contended for by the appellant in this case, and said:

"It is urged, however, that defendants were at least negligent in signing the writing prepared by Waggoner and therefore cannot be heard to deny its obligation. As between the perpetrator of a fraud or his principal who seeks to profit by it on the one hand and the defending party on the other the rule here contended for is one which does not appeal to an enlightened sense of justice."

In Pictorial Review Co. v. Fitz Gibbon & Son et al., 163 Iowa 648, 145 N. W. 315, 316, we said:

"Appellant relies largely upon that class of precedents in which it is held that a person may not sign a written instrument without exercising any care to know what it contains and then escape an obligation so assumed on the plea that he did not know or misunderstood the effect of such writing. But this rule is not intended to make easy any scheme of fraud or deception, and if the evidence tends to show that the party who obtained the paper misrepresented

its contents, and by trick or artifice induced the other party to sign it without reading it for himself, the wrongdoer will not be permitted to retain any advantage so gained if the person injured, acting within reasonable time after the discovery of the fraud, rescinds the agreement."

In this case the evidence shows without dispute that the appellee, upon receiving the appellant's book and statement for $100 claimed due by the appellant, immediately denied the contract and offered to return the book, which was returned a few days later. The trial court in its decision said:

"In this case it was fraudulently intended by the plaintiff that said circular letter and contract should deceive the defendant's president into believing that he was furnishing information that was for the benefit of the plaintiff, instead of signing a contract that obligated the defendant for the payment of money; and said fraud accomplished the purpose for which it was intended."

In view of the attitude of this court toward litigants seeking to enforce contracts to which the signature of the party sought to be held was secured by artifice or trick, as in the Jewelry Co. case and the Pictorial Review Co. case, supra, and in view of the holdings of the courts in the Michigan and Nebraska cases, in which the signature to the instrument sued on was obtained under facts almost identical with the facts in the case now before us, we are convinced that the signature of the appellee in this case was obtained through the same trick and device resorted to in those cases, and that this trick and device was deliberately planned and carried out with the purpose in view of obtaining the signature of the appellee without its knowledge and with no intention on its part that it was entering into a contract.

In our opinion the finding of the trial court is supported by sufficient evidence of fraud, and should be, and is hereby, affirmed.

KINDIG, C. J., and EVANS, ALBERT, STEVENS, and CLAUSSEN, JJ., concur.