Melvin L. BAUMAN, Plaintiff-Appellee,

v.

Carl NUTTER and Mildred I. Nutter, Defendants-Appellants.

Carl NUTTER and Mildred I. Nutter, Cross-Petitioners-Appellants,

v.

James A. STANLEY and John Hynd, Cross-Petition Defendants and Cross-Petitioner, John K. Hynd-Appellees.

No. 2-67191.

Court of Appeals of Iowa.

Oct. 28, 1982.

James F. Fowler of Wilson, Goodhue & Fowler, Indianola, for defendants-appellants.

Roger J. Kuhle of Mumford, Schrage, Merriman & Zorek, Des Moines, for plaintiff-appellee.

J. Riley McManus, Des Moines, for cross-petitioner-appellee John Hynd.

Paul Moser, Jr., Des Moines, for third-party defendant-appellee, James A. Stanley.

OXBERGER, Chief Judge.

Plaintiff Melvin L. Bauman filed suit in district court seeking to compel performance of a purchase agreement for a 151-acre property owned by the defendants, Carl and Mildred I. Nutter. The agreement between Bauman and the Nutters was duly signed and specified a sale price of $75,500. After the filing of the plaintiff's petition, the Nutters filed a cross-petition against James A. Stanley and John Hynd, real estate brokers, seeking damages for breach of fiduciary relationship, false representation, and negligence. A counterclaim was then filed by John Hynd against the Nutters, seeking commission due from the sale of the Nutters' land. After a lengthy trial, the trial court granted plaintiff's request for specific performance and allowed Hynd's claim for commission. The Nutters appealed.

The facts of this case are rather lengthy and complex. The 151 acres owned by the Nutters were listed with Davitt Realty to be sold at $750 per acre. The record indicates that the Nutters told Davitt that the $750 price was firm and that they would take no less. Moreover, the record discloses that the Nutters had rejected offers for less than $750 per acre in the past. The listing agreement with Davitt also specified that the property might be listed with the Multiple Listing Service, a communication exchange that allows members to share information.

Bauman first learned of the sale of the Nutters' property from Jim Stanley. John Hynd, Stanley's employer, a real estate salesman primarily involved with the purchasing of real estate and not a member of the Multiple Listing Service, learned of the sale of the Nutters' property from his cousin, who was a member. The rules of the Multiple Listing Service prohibited sharing such information with nonmembers. Stanley acquired Bauman's signature to a purchase agreement that was later presented to the Nutters. Stanley presented the agreement to Davitt Realty, who told him that the Nutters would not accept any offer lower than $750 per acre. Against Davitt's advice, Stanley nonetheless presented the agreement to the Nutters, who signed it.

## I. Scope of Review

Plaintiff's claim for specific performance is in equity. Our review of equitable proceedings is de novo. Iowa R.App.P. 4. Our responsibility is to review the facts as well as the law and to determine rights anew from the credible evidence on properly presented and preserved issues. *In re Marriage of Full,* 255 N.W.2d 153, 158 (Iowa 1977). While we give weight to the findings of the trial court, especially where the credibility of witnesses is involved, we are not bound by them. *In re Marriage of Novak,* 220 N.W.2d 592, 597 (Iowa 1974); Iowa R.App.P. 14(f)(7).

## II. Specific Performance

Specific performance being wholly discretionary, various grounds have been used for its denial. Among them are:

1. Hardship.

2. Where granting of specific performance would prove harsh, oppressive or unconscionable.

3. Where the consideration for the contract is equitably inadequate, though sufficient as a technical matter at law.

4. Where there was mistake on part of the defendants, though such mistake was not such as to warrant the invalidating of the contract.

5. Where the party seeking to enforce the contract specifically, made innocent misrepresentations relied upon by defendant, or where the enforcing party was otherwise guilty of inequitable conduct.

*Clayburg v. Whitt,* 171 N.W.2d 623, 631–32 (Iowa 1969). In the instant case, the plaintiff seeks specific performance of a written contract. The defendants, on the other hand, contend that specific performance should not be granted and seek a rescission of the contract. In particular, the Nutters claim that when Stanley approached them with an agreement signed by Bauman, they mistakenly assumed that Stanley was from Davitt Realty and that the contract price represented their asking price, $750 per acre or a total sale price of $113,250. The defendants contend that to enforce such a contract would not be equitable. In contrast, the plaintiff claims that the defendants are bound by their signatures on the agreement. We agree with the defendants that the equities are such that specific performance should not be granted. *See generally Skubal v. Meeker,* 279 N.W.2d 23, 27 (Iowa 1979) ("invocation of equity jurisdiction permits the necessary flexibility to work out equities between the parties.").

### A. Mistake

"It is a general rule of law . . . that one who signs a written instrument without reading it is bound thereby, and will be precluded by his own negligence from claiming that he did not know its contents. It is equally well established, however, that if a person is induced to sign an instrument without reading it through some trick or artifice or false representation on the part of another, he will not be estopped to deny the validity of the instrument to which his signature was thus procured."

*International Transportation Association v. Atlantic Canning Co.,* 216 Iowa 339, 343–44, 249 N.W. 240, 242 (1933) (citations omitted). In the case at bar, the Nutters thought that Stanley worked for Davitt Realty and trusted that the agreement included a price of $750 per acre. The Nutters therefore contend that their failure to break down the total sale price to a per-acre figure was wrongfully induced by Stanley, the real estate broker who presented them with the agreement. We agree.

The testimony at trial revealed that when Stanley first approached Carl Nutter, Stanley said, "We've sold your Osceola farm, and I have a purchase agreement here. If you care to look it over and want to sign it, you may do so." Similarly, Mildred Nutter testified that Stanley said, "I sold your place for you." Stanley, however, did not identify himself as not being associated with Davitt Realty, the broker with whom the Nutters had a listing agreement. Moreover, Stanley did not "go through the [agreement] with [Carl Nutter] piece by piece by piece." We also note that the sale price in the contract was not expressed on a

per-acre basis; rather, it was listed as a net price. Most important, Stanley, knowing that the Nutters would not sell for less than $750 per acre, "just handed [the agreement] to" Carl Nutter without any indication whatsoever that the most important term, *viz.*, the sale price, less than that for which the Nutters had asked. Stanley's concealment of this knowledge is a "trick or artifice" within the meaning of *International Transportation Association.*

In reaching this conclusion, we are not unaware that the Nutters might have made an unwarranted assumption that Stanley had procured an offer for $750 per acre. In short, we do not condone the Nutters' apparent carelessness. *See Midland Mortgage Co. v. Rice,* 197 Iowa 711, 714, 198 N.W. 24, 27 (1924) (party to a contract should suffer consequences of its own carelessness). However, because the plaintiff's claim seeks to invoke the equity power of the court, and bearing in mind that Stanley, having failed to disclose his identity and possessed with the knowledge that the Nutters would not accept any price lower than $750 per acre, nonetheless failed to inform the Nutters of the fact that the agreement was for a sale at a lower price, we are convinced "that equity should do nothing to help any of the parties out of a bad deal. That equity can do anything does not mean that plaintiffs should get everything." *Clayburg v. Whitt,* 171 N.W.2d 623, 633 (Iowa 1969).

Having concluded that Stanley's concealment of his identity and a material fact wrongfully induced the Nutters into signing the contract, the question remains whether Stanley's wrongful conduct is attributable to the plaintiff. We hold that it is.

B. Agency

 For Stanley's wrongful action to be attributable to the plaintiff, a principal-agent relationship must exist between the plaintiff and Stanley. *Restatement (Second) Agency* § 7 (1958) (duly authorized agent has power to affect legal relations of principal); *see Walnut Hills Farm, Inc. v. Farmers Co-op Co.,* 244 N.W.2d 778, 780

(Iowa 1976) ("[a]gency is a fiduciary relationship in which one person acts for and on behalf of another."). A principal-agent relationship may be implied from the parties' words or conduct and the circumstances of the particular case. *Smith v. Iowa Liquor Commission,* 169 N.W.2d 803, 811 (Iowa 1969), *appeal dismissed,* 400 U.S. 855, 91 S.Ct. 146, 27 L.Ed.2d 130 (1970). Our inquiry is thus whether the facts and circumstances of this case support a finding of an agency relationship.

In his testimony, Bauman stated:

[O]n a Saturday, Jim Stanley stopped out to my house, and I told him what I was willing to offer and the terms. And then on the following Monday, he brought the offer out to me, and I signed it, and he said he was taking it down to present to the Nutters.

In addition, the record shows that Bauman told Stanley of his interest in buying farmland in Iowa. In particular, Bauman testified that he had asked Stanley "to keep his eye out and keep [Bauman] in mind if he found anything suitable." Finally, Stanley had acquired one other piece of property for Bauman in the past and that Bauman was "satisfied with the job [Stanley] did" on another piece of property.

Our examination of Bauman's testimony satisfies us that an agency relationship exists. *See State v. Sellers,* 258 N.W.2d 292, 297 (Iowa 1977) (agency relationship may be established by statements and conduct of principal). Bauman acquiesced in Stanley's activities in locating a suitable piece of property and in relaying the offer to the Nutters. *See Mayrath Co. v. Helgeson,* 258 Iowa 543, 548, 139 N.W.2d 303, 306 (1966) ("apparent authority" is that which is knowingly permitted by principal). *Cf. W. Seavey, Handbook of the Law of Agency* § 37, at 67–68 (1964) ("authority may be found when a principal does not object when the agent does a series of acts"). Further, Stanley works for Hynd whose business is primarily directed at finding buyers. It is quite apparent that Stanley is Bauman's agent. Bauman is therefore bound by Stanley's exercise of such appar-

358

ent authority. *Hall v. Crow,* 240 Iowa 81, 90, 34 N.W.2d 195, 200 (1948).

Having concluded that a principal-agency relationship exists between Bauman and Stanley, Stanley's wrongful conduct and resulting "trickery or artifice" (*see* Division II A, *supra*) is attributable to Bauman. We therefore hold that specific performance is not available to the plaintiff. The trial court's judgment decreeing specific performance is reversed.

### III. Rescission

■ In addition to their contention that specific performance should not be granted, the defendants in their answer and on appeal also seek rescission of the contract. We note that " '[r]escission is not granted as matter of course on denial of specific performance.' " *Clayburg,* 171 N.W.2d at 631. Rather, " '[a] court of equity is always reluctant to rescind, unless the party can be put back *in status quo.* ' " *Bigelow v. Wilson,* 99 Iowa 456, 464, 68 N.W. 798, 800 (1896). In the instant case, it appears that the status quo ante of the parties can be restored if respective status quo if the contract is rescinded and Jim Stanley is directed to return the $1000 tendered by the plaintiff as "earnest money." We also note that when the Nutters discovered that the agreement contained a price term of less than $500 per acre the morning after the signing, they immediately attempted to rectify the situation and called Davitt and Stanley. We therefore hold that the purchase agreement be rescinded and the $1000 "earnest money" be returned to the plaintiff. The parties may, of course, enter into a new contract. *See generally Recker v. Gustafson,* 279 N.W.2d 744, 755 (Iowa 1979) ("[W]hen a contract is rescinded the contractual obligations are discharged, although parties may enter into new contract.").

### IV. Broker's Breach of Fiduciary Relationship, Misrepresentation, and Negligence

In their cross-petition, the Nutters claim that Stanley and Hynd procured the signing of the purchase agreement via negligence and misrepresentation and that Stanley and Hynd breached a fiduciary relationship. In light of our holdings in Divisions II and III *supra,* the defendants suffered no damages. We therefore need not address the cross-petitioners' claims. The judgment of the trial court dismissing the cross-petition is affirmed.

### V. Commission

■ John Hynd, the real estate broker who employed Jim Stanley, seeks to recover $3775 from the Nutters for commission due under the listing contract. The listing contract provided that "THE OWNER AGREES . . . [t]o . . . give . . . Broker . . . the sole and exclusive right to find a purchaser for [Nutters' property] . . . for the sum of $750 per acre." The contract then provides that the broker would be paid 5 percent commission on the sale price. In return, the broker agrees "to endeavor to procure a purchaser *according to the terms . . . hereof.*" (emphasis added). In the case at bar, Hynd produced a buyer ready, willing, and able to pay $500 per acre for the Nutters' property. Hynd did not, however, procure a purchaser who was ready, willing, and able to pay $750 per acre for the Nutters' property as stated in the listing agreement. We therefore hold that Hynd's failure to perform as required by the listing contract nullifies any claim he might have had to compensation under the contract. *See generally Roland A. Wilson & Associates v. Forty-O-Four Grand Corp.,* 246 N.W.2d 922, 925 (Iowa 1976) (contractor's failure to perform relieves owner of duty to pay). The judgment of the trial court for Hynd is reversed.

### V. Attorney Fees

Plaintiff Bauman's attorney has filed an application and affidavit for attorney fees on appeal. We find no basis to award attorney fees to any of the parties. The application for attorney fees is therefore denied.

AFFIRMED IN PART, REVERSED IN PART.