## J. W. FULTON, JR., v. P. H. FISHER, Appellant.

**Fraud:** EXCHANGE OF PROPERTY: EVIDENCE: REVIEW. Direct and uncontradicted evidence of conspiracy is not required to make out a case of concerted action in inducing an exchange of property by misrepresentation; and in reviewing the findings of the court in a law action weight will be given the conclusion of the trial judge because of his better position to estimate the credibility of the witnesses before him, in so far as their evidence is in conflict.

**Same:** RESCISSION: FRAUD: EVIDENCE. In this action to rescind a conveyance of land made in exchange for a stock of goods the evidence is held to show misrepresentation as to the character and value of the land.

**Same:** FRAUD: STATEMENTS OF FACT: CHARACTER AND VALUE OF LAND. Representations made by the owner of land concerning its character and value to one not familiar with the land in question, or with land in the same locality, and who could not reasonably be expected to investigate and known not to be in a situation to obtain information, may constitute statements of fact and not mere expressions of opinion.

**Same:** EVIDENCE. In this action to rescind an executed contract for the exchange of a stock of goods for land on the ground of fraudulent representations and to recover damages the evidence is held to justify a finding and decree for plaintiff.

**Same:** FRAUD: PRINCIPAL AND AGENT. Where there has been connivance between the principal and his agent the principal is chargeable with the misrepresentations of the agent. In this action

the evidence is held sufficient to show a connivance between defendant and his agent.

**Same:** RESCISSION: RELIEF. One who is entitled to the rescission of an executed contract for the exchange of property can not be defeated by the fact that the other party has parted with the property received; and where, as in this case, the plaintiff exchanged a stock of hardware for real estate and is shown to be entitled to rescission on the ground of fraud, and having offered to reconvey the real property he is entitled to a decree directing reconveyance and to judgment for the reasonable value of the stock of goods exchanged therefor and disposed of by defendant.

**Same:** RESTORATION OF PROPERTY. Where, as in this case, the plaintiff tendered back the deed received and offered to quitclaim the property and there was no evidence that he had received any rents or profits from the land, and he offered to do equity, no further restoration by him of money received from defendant was necessary, as his claim for damages greatly exceeded the sum so received and retained.

**Same:** RESCISSION: REASONABLE TIME. A party to a fraudulent contract is entitled to a reasonable time within which to rescind after he learns or is chargeable with knowledge of some just ground for complaint. This action is held under the circumstances to have been brought within a reasonable time.

*Appeal from Jefferson District Court.*—HON. C. W. VERMILION, Judge.

TUESDAY, JUNE 6, 1911.

ACTION in equity for a decree rescinding a conveyance of land to plaintiff in exchange for a stock of hardware transferred by plaintiff to defendant, which had subsequently been disposed of by the defendant. There was a tender in the petition of a reconveyance to defendant of the land and return of the money consideration received by plaintiff in trade; and plaintiff asked that he be awarded by way of damages the value of the hardware stock. The court entered a decree for plaintiff awarding him damages in the sum of $3,895.22, with interest, and the defendant appeals. Plaintiff's wife was joined with

him, and defendant's' wife was made a codefendant, but, as the interests of the wives are not involved in the determination of the controversy, the action will be treated upon this appeal as though it were brought by J. W. Fulton, Jr., alone against P. H. Fisher as sole defendant. *Affirmed.*

*L. D. Jones, E. F. Simmons, Thomas & Thomas, Crail & Crail* and *Ball & Ball,* for appellant.

*Ralph H. Munro* and *Leggett & McKemey,* for appellee.

McCLAIN, J.—The grounds of rescission alleged in the petition are that defendant falsely and fraudulently represented to plaintiff that the farm of about one hundred and thirteen acres, situated a few miles southeast of Ottumwa, which defendant exchanged to plaintiff for the hardware stock of the latter located in Fairfield, consisted of good prairie land worth $65 per acre in cash, that he had had an opportunity to trade said farm to another party for $70 per acre, and that the farm was mortgaged to an Ottumwa bank for $3,400. It is further alleged that when this exchange was made plaintiff was to defendant's knowledge not acquainted with the character or value of the farm, and was dependent for his information with reference thereto upon the statements of defendant. It is further alleged by way of ground for rescission that by a conspiracy in which defendant and a firm of real estate dealers known as Judd Bros., and one J. F. Sloan, were parties, plaintiff was induced to make the exchange in the belief that Judd Bros. as agents for plaintiff had effected a sale of the farm to Sloan, a responsible purchaser, misrepresented to be a farmer in Davis county, at $70 per acre for cash. All the allegations of plaintiff's petition were denied by defendant, but, after hearing the

testimony, the trial court found the allegations of the petition to be true, both as to the false and fraudulent representations and as to conspiracy. We shall discuss first the general sufficiency of the evidence to sustain the decree, and afterwards certain specific grounds relied upon for appellant as necessitating a reversal.

I   It must be conceded that the correctness of the court's decree under the evidence depends very largely upon the credibility of the witnesses testi-

1. FRAUD: ex-
change of
property: evi-
dence: re-
view.

fying on either side, for none of the essential facts relied upon by plaintiff to show false and fraudulent representations and conspiracy were left uncontradicted by witnesses for defendant.

But direct and uncontradicted evidence of conspiracy is not required to make out a case of this kind (*Hanson v. Kline,* 136 Iowa, 110), and we are justified in passing on the credibility of witnesses to give considerable weight to the conclusions reached by the trial judge who had the witnesses before him, and was in a better position than this court can possibly be to estimate the weight to be given to their testimony so far as it was in conflict. *Wilkie v. Sassen,* 123 Iowa, 421; *Mosher v. Goodale,* 129 Iowa, 719; *Whitley v. Johnson,* 135 Iowa, 620.

II.   That the representations made by defendant to plaintiff as to the character and value of the farm were false seems to be established by a great preponderance of

2. SAME: rescis-
sion: fraud:
evidence.

the evidence. The land was not prairie land, but timber land, from which the timber had been removed; and, while it was in the main actually in cultivation, it is quite clearly shown that such land is not as valuable as prairie land. It also appears that the land was broken with some ravines which materially decreased its value, and that these ravines were not of a character which would probably have existed on prairie land. On the question of value there is much con-

flict in the evidence, as is usual in such cases.' Witnesses for plaintiff fixed the selling price per acre at the time the exchange was made, based on their knowledge of this particular farm and their information as to the selling price of similar farms in the vicinity, at from $25 to $35 per acre, while witnesses for defendant fixed the price at from $55 to $65 per acre. Few of the witness for the defendant attempted, however, to testify as to the value at about the date of the transaction. We are satisfied that a representation of the cash price at which the farm could be sold at the date of the exchange as $65 per acre was materially false.

III. The representations of defendant as to the character of the farm and its value would perhaps be considered only expressions of opinion if made to one who was familiar with the farm, or land in that locality, or to one who might reasonably be expected to investigate before purchasing; but, for reasons hereafter to be indicated, the defendant well knew that plaintiff had no information on the subject, and was not in a situation to obtain information, for the deal was closed within twenty-four hours after there was any definite prospect that an exchange would be considered by plaintiff. Under such circumstances, representations as to the nature and value of the farm might well be considered as statements of fact, and not expressions of opinion. *Scott v. Burnight,* 131 Iowa, 507; *Brett v. Van Auken,* 99 Iowa, 553.

3. SAME: fraud: statements of fact: character and value of land.

IV. We come now to a feature of the case which seems to us most persuasive in plaintiff's behalf, and which requires a fuller recital of the particulars of the transaction. About April 16, 1907, plaintiff, who was anxious to realize money out of his interest in a farm, of which he was joint owner with defendant, and out of his hardware stock, commenced to solicit defendant, his neighbor and friend, to suggest

4. SAME: evidence.

some method by which his interest could be disposed of. With reference to the farm jointly owned, an exchange was negotiated of which no complaint is now made; and with reference to the hardware stock, some suggestion was made on the one side or the other as to an exchange thereof for this farm southwest of Ottumwa and about seventy-five miles distant from the town of Fairfield, where both parties resided. Plaintiff did not at first seem willing to consider such an exchange, for he indicated that he must have money; but on April 26 following the defendant · brought and introduced to plaintiff a member of the firm of Judd Bros., real estate agents in Ottumwa, as we believe from the evidence, for the purpose of having this real estate agent encourage plaintiff to make such exchange. It is true that both defendant and Judd as witnesses disclaim any such purpose or plan, but the whole tenor of the negotiation and of the subsequent conduct of the parties gives strong plausibility to plaintiff's account of. what took place, which was that Judd at once broached the question whether plaintiff was negotiating with defendant for the acquisition of the farm, and advised defendant that he thought he had a purchaser who would take the farm at $70 per acre. It was then arranged between plaintiff and Judd that the latter should return to Ottumwa and on that afternoon ascertain whether the prospective purchaser would buy the farm and advise plaintiff by telephone or telegraph. The next morning—that is, on the morning of the 27th—plaintiff received from Judd Bros. the following letter, dated at Ottumwa, April 26: "We had our man out to see the P. H. Fisher farm. He says that he will give the $70 per acre for it, and is ready to go into a contract at any time. He is to be at our office tomorrow afternoon, April 27. If you could close with Mr. Fisher so as to wire us by noon or a little after, we would be ready to contract with him when he gets here." Thereupon plaintiff saw defendant, and solicited an ex-

change of his hardware stock for the farm. Terms were agreed upon, and plaintiff promised to advise defendant in the afternoon whether he would enter into a contract. Plaintiff then employed a lawyer, one Jordan, to go at once to Ottumwa with power of attorney to close a contract with the purchaser proposed by Judd Bros., provided he was satisfied with the purchaser. Jordan went to Ottumwa, and in the office of Judd Bros. J. F. Sloan as the prospective purchaser was introduced to him, and, in the presence of one of the Judds, there was a conversation between Sloan and Jordan, in which it was stated that Sloan was a farmer residing in Davis county, owning a forty-acre farm, and that his father was a man of financial means. The terms of the purchase proposed by Sloan involved the payment of $50 in cash and the execution of a written agreement of conveyance, by the terms of which the balance of the purchase price at $70 per acre was to be paid in cash within ten days. By telephone Jordan advised plaintiff of the terms of the proposed contract, and was authorized by plaintiff to proceed to execute such contract in his behalf, whereupon a written agreement containing the terms above mentioned was entered into in the presence of a member of the firm of Judd Bros., signed by Sloan, and by Jordan as agent for plaintiff. It was provided in the contract that in lieu of an equivalent amount in money the purchaser might assume the mortgage of $3,400 on the land.

After directing Jordan to close the contract with Sloan, plaintiff on the same day entered into a written contract with the defendant for the exchange of the hardware stock for the farm, in which it was recited that defendant agreed to sell and convey the farm above referred to for the consideration of $7,910. The plaintiff agreed to sell and transfer by bill of sale his hardware stock to be invoiced at the present wholesale price, five percent to be added for carriage. It was further

provided that fixtures were to be included in the bill of sale, but valued at twenty percent discount from the cost price, and that unsalable goods should be included at a price determined by the invoicers. The invoice was to be made by two competent men. It was further provided that if the invoice did not reach $4,500 the plaintiff should pay the difference in cash to the defendant, and, if it exceeded that amount, the defendant should pay the excess in cash to the plaintiff, and that the bill of sale and the warranty deed executed contemporaneously with the contract should be left in escrow until all the conditions of the contract should be complied with. In about a week the inventory made by two persons agreed upon by the plaintiff and defendant was completed, showing the value of the stock fixed in accordance with the terms of the contract to be $4,604.78, whereupon defendant paid to plaintiff $104.78 in cash, and the bill of sale and the deed were delivered to the parties, respectively, and recorded. In the meantime Jordan had been advised by letter of one of the firm of Judd Bros., dated April 29 (apparently in answer to a letter from Jordan), that "I think you will hear from Mr. Sloan the latter part of this week, but I question whether or not he will be ready to close up the deal before the first of next week for he had to go to Illinois. But I will let you know as soon as I hear from him." Later Jordan received from Judd Bros. a letter dated May 9 in the regular course of mail, indicating that Sloan would need a little further time to complete the purchase, and later he received a letter from Sloan, postmarked from Pulaski, in Davis county, indicating that the latter would not be able to carry out his contract. The last two letters above referred to were received by Jordan after the exchange between plaintiff and defendant had been fully consummated, and the instruments had been delivered.

As to the *bona fides* of the entire transaction on plaintiff's part, there can be no serious question. It is indi-

cated in argument that plaintiff was endeavoring to secure a blank deed to the farm which would enable him by inserting the name of a purchaser to defraud his wife out of her dower interest, and there is some evidence that plaintiff and his wife had not been living in domestic harmony. However this may be, there is no imputation of bad faith on plaintiff's part as between him and defendant. While it is contended that the hardware stock was unsalable, unseasonable, and badly selected, there is no claim supported by any evidence that the invoicers agreed upon were not competent or fair, and the great weight of the testimony is that the stock was worth one hundred cents on the dollar of the invoiced price. It had all been purchased new within two years.

Defendant's fraud is made out by proof of his misrepresentations as to the character and value of the land with knowledge that plaintiff had had no opportunity at the time the contract was made to investigate such character and value; that defendant brought about the negotiations between plaintiff and Judd Bros. with the evident purpose of having the latter represent to the plaintiff that the land was worth at least $65 per acre, and that they had a purchaser for it at $70 per acre, and that Judd Bros., acting covertly as defendant's agents, but ostensibly as agents for plaintiff, procured the contract with Sloan for the sale to him of the land at $70 per acre, well knowing that he would be unable to carry out the contract. That Judd Bros. well knew Sloan to be financially irresponsible clearly appears from the circumstances of the whole case. He was not a farmer residing in Davis county, owning forty acres of land, but he was and for many years had been a resident of Ottumwa, with no property of which he or the Judds could give any account except an equity worth $200 in a residence lot in Ottumwa. Sloan as a witness defended the *bona fides* of his purchase on the theory that he was a real estate dealer, and that he

hoped and expected to dispose of the farm on such terms that he would be able to carry out his contract, which it is to be remembered required payment in cash within ten days of the contract price of the farm in excess of the mortgage. He claimed that he entered into some negotiations for the disposal of the farm in trade, but he does not indicate that he could have had the slightest hope or prospect of making such disposition of the property that he could pay in cash as he agreed.

The only serious question on the record is as to the connivance between defendant and Judd Bros. If there was such connivance, then defendant is chargeable with the misrepresentations of his agents. As to the relations between defendant and Judd Bros., it appears that the latter had been the agents for the former for several years in various transactions, and they pretend that until they became the agents for plaintiff to dispose of the farm to Sloan, they had it on their list as the property of defendant for sale at $70 per acre. If they already had a prospective purchaser for defendant at that price, there is no reason in the nature of things why they should have induced plaintiff to step into defendant's shoes and undertake to make a contract of sale of the property for him at the same price on a commission somewhat less as it appears than they would have been entitled to have received for the same sale if made for defendant. It is a significant fact as tending to connect defendant with the acts of Judd Bros. that at the conclusion of the interview between a member of the firm and plaintiff such member should have immediately returned to defendant's place of business, and then entered into communication with him by telephone on the following day, after having written the letter above set out to the plaintiff. The circumstances point irresistibly in our opinion to a connivance between defendant and Judd Bros. If there was such connivance, then defendant was

5. SAME: fraud: principal and agent.

guilty of fraud justifying the rescission on which plaintiff insisted. The inadequacy of the consideration on defendant's part may well be taken into account, and, as already indicated, it appears by the preponderance of the evidence that the market value of the farm was little, if any, in excess of the mortgages assumed by plaintiff. With reference to these mortgages, it appears that while they were both held by an Ottumwa bank, one of them for $1,000 had been taken by the bank and was a first lien, while the other for $2,400 was taken by a private party and was held by the bank for collection; so that any inference to be drawn from the general understanding that banks do not loan on real estate in excess of fifty percent of its value with the result that defendant's equity in the farm was worth substantially at least $3,400 was unwarranted.

In view of the fact that defendant had disposed of the hardware stock before plaintiff attempted to make rescission, the court was justified in decreeing that plaintiff should reconvey the farm to defendant as he had offered to do, and that he should have judgment against the defendant for the reasonable value of the stock less the amount paid in cash by the defendant in the exchange. Fixing the market value of the stock as the court did at $4,000, it properly rendered judgment against defendant for the difference between such market value and the cash paid. That a plaintiff entitled to rescission under such circumstances is not to be defeated by the fact that the other party to the exchange had parted with the property received by him, but must account for its value, see *Creveling v. Banta,* 138 Iowa, 47.

6. SAME: rescission: relief.

V. Among the matters relied on for appellant as constituting specific grounds of reversal is the alleged failure of plaintiff to offer restoration; but it does appear that plaintiff tendered back to defendant the deed which

he had received and offered to deliver a quitclaim deed.
This we think was all that was required
of him. As to a certain lease and not for
rent which defendant had purported to trans-
fer to plaintiff, it clearly appears that neither was of value,
for the tenant had never come into possession, and his
abandonment of his contract of lease had been acquiesced
in by defendant's agent. Return of any money received
from defendant was unnecessary in view of the claim for
damages greatly in excess of the money thus retained.
Moreover, plaintiff offered to do equity, and the court
could adjust any obligation of the plaintiff to the defend-
ant arising out of the attempted rescission. There is no
evidence that plaintiff received any rents and profits dur-
ing the time the title remained in his name, or that he
in any way incumbered or impaired the title.

7. Same: res-
toration of
property.

The contention that plaintiff's attempted rescission
was not within a reasonable time is met by the showing
in the record that plaintiff had no reason immediately to
believe that the land was not substantially
of the quality and value represented, nor
that Judd Bros. had not acted in good faith
in procuring Sloan as a purchaser, ready,
willing, and able to buy at $70 per acre. Sloan's letter
renouncing his contract was mailed from Davis county,
although he did not reside there, and it does not appear
that even upon receipt of that letter plaintiff had any
reason to suppose he was not a good faith purchaser as
represented by Judd Bros. Plaintiff was entitled to a
reasonable time to rescind after he knew or was charged
with knowledge of some just ground for complaint and there
is no evidence that any such ground of complaint came
to his knowledge, or could reasonably have been ascer-
tained until some time after the hardware stock had been
disposed of by defendant. Within less than six months
after that time plaintiff tendered back his deed, and did

8. Same: rescis-
sion: reason-
able time.

all that he could to put the defendant in *statu quo*.  Plaintiff was not chargeable with knowledge of defendant's fraud merely on the failure of Sloan to carry out his contract of purchase, for plaintiff was not then in a situation to know that defendant was at fault.  If there was collusion between defendant and Judd Bros. which constituted defendant's principal wrong and brought about the injury to plaintiff, then, until circumstances within plaintiff's knowledge disclosed the fact of such collusion, he was not at fault in failing to discover it.  He did not until the trial have knowledge of the *indicia* of fraud which were developed by the cross-examination of defendant's witnesses.  We think there was no unreasonable delay in rescission, and that plaintiff was not guilty of any laches which would defeat his recovery in this action.

We reach the conclusion that the record supports the findings of the trial court, and the judgment therefore is affirmed.