EZRA ALDRICH et al., Appellees, v. CHARLES E. WORLEY et al., Appellants.

FRAUD: False Representations — Actionable Matters of Fact and
1  Opinion. Representations (1) that land was a *choice* tract, (2) that it was adapted to rice culture at *small* expense, (3) that it was *well* improved, (4) that it had improvements in *good* repair and of *ample* capacity and of a named *value*, and (5) that the cost of operating certain machinery *would not exceed* a named sum, are statements of present fact and actionable, if false. If treated as matters of opinion, they are likewise actionable if false, when made by a party as of his own *personal* knowledge.

FRAUD: False Representations—Measure of Damages. The measure of
2  damages for false representations inducing the purchase of real estate is the difference between the value of the land as received and the value as it would have been, had the land been as represented.

Headnote 1:  26 C. J. pp. 1083, 1093.  Headnote 2:  27 C. J. p. 92.

*Appeal from Delaware District Court.*—E. B. STILES, Judge.

NOVEMBER 24, 1925.

ACTION in equity, for damages for fraud and false representation in the sale of a rice farm in Arkansas. The court awarded $12,050 damages to plaintiffs, from which judgment, defendants appeal.—*Affirmed.*

*Bronson & Tierney* and *George S. Banta,* for appellant Worley.

*John Locher* and *J. E. Remley,* for appellees.

ALBERT, J.—Various pleadings were filed in this case, and on account of an answer at one time. filed, the case was, by motion, transferred to equity. Later, when the issues were finally made, the only question remaining was the question of damages for fraud and false representation in the sale of the land. No motion, however, was made to return the case, under these issues, to the law calendar; hence the trial in equity.

1. FRAUD: false representations: actionable matters of fact and opinion.

In the latter part of the year 1919, the appellee Ezra Aldrich purchased from Burks & Ellis, a real estate firm, with headquarters in Stuttgart, Arkansas, a 281-acre tract of land, at the agreed price of $35,000. He agreed to assume a $7,000 mortgage then on the land, pay $10,000 in cash, and secure the balance by a mortgage in the sum of $18,000. Aldrich paid the cash payment of $10,000, and $2,000 in addition thereto, making a total of $12,000 paid in cash. Appellee's claim is that he had never seen or made inspection of the land, prior to the time of purchase, and that he relied solely upon the representations of Worley with reference thereto. He charges that Worley represented this farm as a choice tract of rice-producing land, and that the location and lay of the land, together with the quality of the soil, made it a tract upon which rice could be raised in highly paying quantities, without any great expense; that said land was well improved; that there were two dwelling houses thereon, in good repair, as well as granaries and other buildings furnishing ample room for storage of crops grown on the

land; that buildings on said land were of the value of at least
$15,000; that there was a well, pump, and irrigation system on
said land which would furnish all water necessary in the rais-
ing of the rice crop, and that the land so lay that water from
the well could be pumped and the entire tract irrigated from
·such well; that electric power for the pumping was used, and
that the expense of pumping, for complete irrigation of the
farm, would not exceed $10 per acre per year; that the actual
and reasonable market value of said tract of land was at least
$150 per acre. Worley further represented that, by reason of
his acquaintance with the owners of the land, he could obtain
it for less than it was reasonably worth, to wit, $125 an acre.

Appellees are husband and wife, and have lived most of
their lives on a farm near Ryan, Iowa. Ezra Aldrich was 46
years and his wife 35 years of age at the time of commencement
of this action. They had very little education and slight busi-
ness experience, and no experience in the purchase of land other
than the farm on which they lived, in Delaware County.
Charles E. Worley had owned and operated a harness shop
and store in Ryan for many years, and appellees had known
him all their lives. For several years prior to 1919, Worley
had been interested in rice lands in Arkansas near Stuttgart.
He talked of the wonderful resources of that country, the great
profits to be made in such land, and lauded the·Stuttgart coun-
try to his friends, especially to these appellees. The firm of
Burks & Ellis was a real estate firm at Stuttgart, which had
salesmen scattered through various parts of Iowa and Illinois.

In September, 1919, Ezra and Clyde Aldrich and Reggie
Tracey, brother-in-law of Ezra Aldrich, went to Stuttgart in
company with Charles Worley and one Brayton, who lived at
Manchester and was the agent of Burks & Ellis. When they
reached Stuttgart, they all went to the office of Burks & Ellis,
who furnished automobiles and showed them land in the vicinity
of Stuttgart for three or four days. They did not buy any land
at that time, but later negotiated for a 640-acre tract. How-
ever, nothing came of this. After their return home, Worley
and his wife repeatedly talked to the appellees about purchas-
ing rice land at Stuttgart, and the importunities of Worley

finally induced appellees to purchase the aforesaid 281-acre tract.

It is impracticable to set out all of the evidence in this case, although the decision of the case rests largely, if not wholly, on fact questions.

Aldrich claims that he purchased this land without ever having seen or inspected it, and relied wholly on Worley's representations to him as to the same. Much evidence is devoted to this question, and, while there is some slight inconsistency in his testimony and a conflict generally in the testimony in relation thereto, we hold with him on this contention.

The second contention is that, in substance, Worley represented to appellees, before they purchased the land, that it was a choice tract, and that the location and lay of the land, together with the quality of the soil, made it suitable for rice-raising in highly paying quantities. Aldrich had no experience with the cropping of land for rice, and knew nothing about the kind or character of land necessary or fitted for such use; and from the disputed testimony on this question we conclude that Aldrich established the making of such representations by Worley, as alleged. Appellants assert, however, that such representation is not actionable, and is nothing more than the expression of an opinion. We do not agree with appellants in this; but, even though this were so, the evidence shows undisputedly that Worley made these representations as of his own knowledge, and he is bound thereby. *Dilenbeck v. Davis,* 186 Iowa 30; *Hess v. McCardell,* 182 Iowa 1121; *Haigh v. White Way Laundry Co.,* 164 Iowa 143; *Boddy v. Henry,* 113 Iowa 462; *Hubbard v. Weare,* 79 Iowa 678. As to the effect of an opinion under such circumstances, see *Dimond v. Peace River Land & Devel. Co.,* 182 Iowa 400.

The third representation, in substance, is that the buildings on the property in controversy were worth at least $15,000; and the evidence fairly shows that these representations were made, as claimed, and were false. This is a representation of the present existence of fact, and when established, is a sufficient basis for an action of this kind.

That the representation with reference to the sufficiency of the well to irrigate the entire tract was made, as claimed,

and was false, is sufficiently established by the record. This is equally true concerning the representation that the cost of electricity for pumping water for the irrigation system would not exceed $10 per acre per year.

The record carries in it evidence of other fraud and misrepresentation, aside from those alleged as the basis of this action. Worley had for several years been inviting his friends to accompany him to Arkansas for the purpose of buying land from this same real estate firm. While he denies that he received any commission for the sale of the land to Aldrich, we seriously doubt his veracity in this respect. The evidence shows that, after this deal was consummated, he was the possessor of $10,500 of notes made by Aldrich to the vendor. He seeks to explain this by evidence that he exchanged other notes then in his possession with Burks & Ellis for the Aldrich notes, but frankly admits that the notes he turned in were worthless, or substantially so; and his explanation of the possession of the Aldrich notes is not satisfactory to us. He admits that, in most instances, when any of his friends bought land from this real estate firm, commissions varying from 50 cents to $2.50 an acre were paid him. He denies that there was any agreement between him and Burks & Ellis for payment of commissions, but says it was merely a custom. His testimony shows, however, that he relied on such custom and reaped the benefits therefrom. He repeatedly denied to Aldrich that he was getting any commission for the sale of this land, but claimed it was purely a matter of friendship and an effort to benefit and better the condition of Aldrich, and was not for his own financial or material gain. Worley's subsequent treatment of the appellee, through talk and correspondence, was such as to mislead appellee, and he was lulled into a belief that he had not been defrauded by the representations and promises made to him by Worley.

Taking the evidence as a whole, we are abidingly satisfied that, through the co-operation of the appellant Worley with the real estate firm of Burks & Ellis, aided by the helping hand of the agent Brayton, the appellee was shamefully defrauded, and has suffered serious damage thereby.

The measure of damages in cases of this nature is the differ-

ence between the fair market value of the property as received and its fair market value as it would have been, had it been

2. FRAUD: false representations: measure of damages.

as represented. *Vanarsdol v. Farlow*, 193 Iowa 785; *Workman v. Bales*, 190 Iowa 1061; *Stoke v. Converse*, 153 Iowa 274. On the question of damages, as is usual in cases of this kind, there is a wide variance of opinion. Witnesses for appellees fix the value of the land, at the time in controversy, at from $35 to $60 an acre; while the appellants' witnesses say that the land is worth approximately $125 an acre. The lower court estimated the damage at a fraction less than $43 an acre, or at the total sum of $12,050. We have carefully reviewed the testimony on this question; and while, as said by the lower court, this is an approximation,—which must always be true in cases of this nature,—we feel that the lower court was right in its calculation of damage.—*Affirmed.*

FAVILLE, C. J., and EVANS, STEVENS, VERMILION, and MORLING, JJ., concur.