ORA M. HALL, Appellee, v. A. F. CROW, Appellant.

No. 47187.

(Reported in 34 N. W. 2d 195)

OCTOBER 19, 1948.

REHEARING DENIED JANUARY 14, 1949.

Hird & Cudahy, of Jefferson, and Nelson, Boodell & Grant, of Chicago, Illinois, for appellant.

L. F. Wilcox and Harris & Melson, all of Jefferson, for appellee.

WENNERSTRUM, J.—Plaintiff in an action at law seeks recovery of damages of defendant. He alleges fraud and deceit were used by defendant's agent in the obtaining of a contract. In this contract the plaintiff agreed to grow hybrid seed corn furnished by defendant during the crop season of 1945 and defendant agreed to pay plaintiff a certain price for certain types of corn raised. The corn grown by plaintiff did not result in a yield in the amount plaintiff states defendant's agent represented it would and for this loss he seeks recovery. The case was submitted to a jury which returned a verdict in favor of the plaintiff. The defendant thereafter filed several motions as

a basis for a new trial. These motions were overruled by the trial court and judgment was entered against the defendant. He has appealed.

In the appellee's petition he alleged the contract that he entered into with the appellant was secured by false and fraudulent representations made by H. M. Price, appellant's representative. Appellee claims he obtained a much smaller yield on the eighty acres of land planted with seed furnished by the appellant than Price represented he would prior to the time he entered into the contract. In the several divisions of appellant's answer he sets forth the following defenses:

In Division I he denied the charges of fraud and alleged that the appellant's low yield was the result of weather, condition of the soil, drainage of the land and poor husbandry; Division II asserted that appellee was estopped from claiming damages because of a provision of the contract which stated, "This contract constitutes our full agreement and no verbal agreements have been made"; Division III stated that any damage which appellee may have suffered was the result of his own negligence in not incorporating in the written contract, which he signed, the alleged fraudulent representations of the agent, Price; Division IIIa also alleged that appellee was estopped from claiming any damages from the appellant because of his silence, inaction and acquiescence after receiving a letter from appellant; Division IIIb alleges that appellee knew there was a fifty per cent failure of appellant's seed and that he could have lessened his damages by replanting the eighty acres to other corn or planting it to soy beans or other crops. Appellee, by reply, denied the allegations of appellant's answer and the amendment thereto except that he did admit that the appellant received two copies of the contract bearing appellee's signature and that one copy showing the signature of the appellant and appellee was returned to him. The reply also questioned the legal sufficiency of certain statements incorporated in appellant's answer.

The trial court overruled the appellant's motion for a directed verdict made at the close of the appellee's evidence, as well as a similar motion for a directed verdict made at the close of all the evidence. The court also refused to submit appel-

lant's requested instructions and interrogatories and overruled his objections to the instructions.

The appellant had developed a hybrid corn termed Crow's 607. H. M. Price was the district manager of Crow's Hybrid Corn Company at Jefferson. According to his testimony it was his duty to appoint dealers and through them promote the growth of appellant's product. Several years prior to 1944 H. M. Price had become acquainted with Mrs. Ora Hall, the wife of appellee, while both of them had been teachers in another community. In 1944 this acquaintanceship was renewed in Jefferson and during 1945 and the spring of 1946 the two families visited in their respective homes. The first comment made by Price to Hall relative to raising corn for seed purposes was apparently in January 1945. Conversations on this subject were continued from time to time. The allegations of the appellee's petition and his supporting testimony are to the effect that H. M. Price stated that appellant's corn would yield an equivalent to any other hybrid corn appellee could grow on his farm; that 607 would yield "equally" as well as any other hybrid he would grow for seed crop and that 607 would yield equivalent to any other hybrid he might grow for feed crop. Appellee also testified that Price told him that appellant's hybrid seed would produce equivalent in bushels to any hybrid corn; that the male corn would produce half or less and that border or barrier corn would be as good or better than any hybrid he might choose to grow. Mrs. Ora Hall testified as to the statements made by H. M. Price to her husband.

One of the exhibits introduced by appellant is a seed grower's contract which is shown to have been entered into on the 14th day of March 1945 by Crow's Hybrid Corn Company and Ora M. Hall. This contract, among its other provisions, provided that the appellant was to furnish the seed and was to pay the appellee for female corn acceptable for seed purposes one and three-fourths times the average market price at Chicago for No. 2 corn for any month in 1946 prior to June 1, 1946 and the local market price for female market corn sorted out and not used for seed. The record shows that Ora Hall had this contract in his possession for several days before he signed it and Hall

admits that he read it before it was signed by him. It is further shown that he signed both copies, that H. M. Price then signed them as a witness and the contract was then sent to the appellant. One copy of this contract bearing the signatures of Hall and the appellant was returned to the appellee at his address in Jefferson. It was Hall's claim that he knew nothing about the corn except what appellant's agent told him and that he would not have entered into the contract if he had not believed what Price stated to·him. It is shown by the record that at one time during the negotiations between Price and Hall certain figures were computed by Hall relative to what the possible yield might be. It is Hall's testimony that at the conclusion. of the computations Price stated they were correct. As evidence of the representations and statements made by H. M. Price he testified on direct examination that: "I did make representations·to Ora Hall with reference to the productivity or the yield of the inbreds to be planted for seed purposes * * * I told him that the border or barrier corn would yield as well· as any commercial corn that he could put in." On cross-examination he also testified as follows: "I did make representations as to what it would yield * * * I told him [appellee] that the border corn would grow just as good as any other corn. I got this information from Mr. O'Dea." It is shown that Mr. O'Dea had an interest in Crow's Hybrid Seed Corn Company and is a partner in the Iowa business. It is further shown that the appellant, through representatives gave supervision to the growing of the corn, that the planter boxes were set by appellant's representative prior to the planting and that proper plates were put on the planting machinery by them. There was evidence presented. as to the yield received both by the appellee and other near-by farmers and also as to weather and climatic conditions, as well as evidence presented by the appellant in support of his pleaded defenses not disposed of by the court's prior ruling on questions of law.

The appellant submits as a basis for reversal twenty-six claimed errors. He has summarized them as presenting for the consideration of this court the following questions: (1) Whether the trial court erred in its rulings adverse to the appellant on

the questions of law raised by appellee's reply by reason of the limiting provision of the contract (2) whether the trial court erred in its rulings on evidence which were adverse to the appellant (3) whether the trial court erred in overruling appellant's motion for a directed verdict at the close of appellee's testimony (4) the overruling of appellant's motion for a directed verdict at the close of all the evidence (5) whether the trial court erred in its refusal to give the appellant's requested instructions and requested interrogatories and in overruling appellant's objections to instructions, and (6) whether the trial court erred in overruling motion for judgment notwithstanding verdict and motion for a new trial.

I. An initial question that must receive our consideration is the effect of the provision of the contract limiting the agreement to the statements therein made. It is appellant's contention that even though there had been fraud in the inception of the contract the principal may limit the authority of an agent. He asserts that all parties who deal with an agent with knowledge of his limitations of authority are bound by the limiting terms of a contract. Appellant cites as authority the annotations set forth at 75 A. L. R. 1047, 1061 (contrary holding, 1062, 1068); 127 A. L. R. 140, 143 as authorizing rescission (as permitting recovery of damage, 143, 145). The Restatement of the Law of Agency, Volume I, section 260, is as follows:

"(1)  A principal may, by contract with another, relieve himself of liability in deceit for prior or subsequent frauds of an agent to such other.

"(2)  A contract obtained by an agent through fraudulent misrepresentations of facts may be rescinded by the other party although it provides that it shall not be affected by representations not contained therein."

It is appellant's contention that although there may be a rescission of a contract that is shown to have its inception in fraud of agent yet there can be no recovery in damages.

In James v. Grill, 186 Iowa 1300, 1306, 173 N. W. 897, 899, in commenting upon a contract containing a provision somewhat similar to the one in the instant contract we said:

"Upon the receipt of this paint, defendant had two rights: either to retain the paint and sue for damages, or to rescind the contract by returning, or offering to return, the thing received. He chose the latter. Fraud vitiates all contracts."

In the case of Robinson v. Main, 227 Iowa 1195, 1201, 1202, 290 N. W. 539, 543, we reversed the trial court which had directed a verdict in a case wherein it was claimed there were fraudulent representations. Plaintiff had brought suit to recover the purchase price of a machine and sought rescission of the contract because of claimed false representations made by the selling agent. In this case the contract limited the authority of the soliciting agent. We therein reviewed our several holdings and stated:

"It is also true defendant was bound by the misrepresentations of his agent inducing the sale though the contract expressly limited the authority to make agreements for the company and stated that the buyer had read the order and understood all of its terms and conditions.

"In Bonewell v. Jacobson, 130 Iowa 170, 172, 106 N. W. 614, 615, 5 L. R. A., N. S., 436, the opinion states:

" 'It is perhaps true that by a stipulation in a written contract collateral agreements or warranties attempted to be made by agents may be prevented from becoming portions of the contract between the parties, but no such stipulations can, as we understand it, prevent the interposition of the defense of fraud which has induced the making of the contract.'

"In the case of Good Roads M. Co. v. Ott, 186 Iowa 908, 913, 171 N. W. 721, 722, Justice Stevens, speaking for [this] court, states:

" 'But one other contention of counsel for appellant requires notice, and that is with reference to the following provision of the contract:

" ' "This order embodies the entire understanding, is not subject to countermand, and is not affected by any verbal agreements."

" 'Evidence tending to show that defendant was induced to sign the contract by fraudulent representations by the plaintiff is not excluded by this provision thereof. Such was our holding in Bonewell & Co. v. Jacobson, 130 Iowa 170.'

"See Pictorial Co. v. Fitz Gibbon & Son, 163 Iowa 644, 145 N. W. 315; McTee v. Ryder, 221 Iowa 407, 265 N. W. 636."

We know the authorities are not agreed as to the effect of a clause in a contract restricting its provisions to those therein set out. Regardless of this variance we hold that our previously referred to Iowa authorities are a basis for the holding that where there is evidence of fraudulent misrepresentations in the inception of a contract such misrepresentations can be the basis for either an action to rescind or for damages, despite the limiting provisions of a contract. We do not feel disposed to depart from the rule this court has previously announced.

The appellant questions the applicability of the case of Bates v. Southgate, 308 Mass. 170, 182, 31 N. E. 2d 551, 558, 133 A. L. R. 1349, 1359, as an authority but one portion of this opinion can well be here set forth as expressing our conception of the issue here involved:

"As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon

agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law."

II. Appellant argues the alleged representations were not of fact but were mere expressions of opinion. The trial court, however, held them "capable of being taken as statements regarding the *quality* of the seed * * * *and of what it was capable of doing in the way of producing other seed*" (italics supplied) adding: "If that were true, the representation would be as to matters that exist, not promises or prophecies."

The trial court further held they were neither representations of fact per se nor expressions of opinion per se but that they might "be either, depending upon the circumstances, and the question of which character the statement has" was for the jury. We agree with this holding.

We have held that statements of opinions of value and quality may be so made as to constitute representations of facts. Hetland v. Bilstad, 140 Iowa 411, 415–418, 118 N. W. 422; Fulton v. Fisher, 151 Iowa 429, 433, 131 N. W. 662; Aldrich v. Worley, 200 Iowa 1009, 1012, 205 N. W. 851. In the instant case the appellee, although he was an experienced farmer and businessman, had never engaged in the raising of the particular type of corn in which appellant's agent sought to interest him. It was for the jury to say whether, under all the circumstances, the representations made were opinions or statements of fact. Hetland v. Bilstad, supra. Our statement in Hise v. Thomas, 181 Iowa 700, 703, 165 N. W. .38, 39 has application to the present situation. We there said:

"If the parties have equal opportunity to know the facts, and the circumstances are such that the buyer could not reasonably have relied upon the statements and representations of the seller as to value, he will not have a right to rely thereon; but if statements or representations of value are positive and

as of a fact, and are so understood and received by the buyer, the same will be so treated, and, if false, may support an action for fraud."

It is true that Hall was not a buyer of the corn but was to be paid for raising it on an agreed basis. However, the statement just quoted has application to the facts here under consideration.

III. The question of the liability of the appellant for the representations made by his agent merits our attention. Relative to the apparent authority of an agent it is stated in 2 Am. Jur., Agency, 82, section 101, as follows:

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal. Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing."

Whether the scope and extent of an agent's authority is a jury question is commented on in 2 Am. Jur., Agency, 360, section 454, as follows:

"It is the settled, general rule that the question of the scope and extent of the agent's authority is to be decided from all the facts and circumstances in evidence, and is to be determined by the triers of the facts. The apparent authority of an agent to act as the representative of his principal is also to be gathered from all the facts and circumstances in evidence, and ordinarily this is a question of fact for the jury's determination."

As further bearing upon the question of whether the authority of an agent should be passed on by a jury it is stated in 3 C. J. S., Agency, 328, section 330, as follows:

"Usually and ordinarily the nature and extent of the authority of an agent and whether the act or contract in controversy was within the scope of his authority are, under the evidence, questions of fact to be determined by the jury or other trier of facts, and the court may and should decline to take such questions from the jury, or from itself as a trier of facts, by granting a nonsuit, directing a verdict, or otherwise."

We have held in the recent case of Grismore v. Consolidated Products Co., 232 Iowa 328, 334, 335, 5 N. W. 2d 646, that the question whether an agency or the extent of the agent's authority was established were questions of fact for the determination of the jury and that whatever an agent says or does within the scope of his actual or apparent authority is the act of and binds his principal. Numerous Iowa authorities are therein set forth in support of these pronouncements.

In Wright v. Iowa Power & Light Co., 223 Iowa 1192, 1195, 1196, 274 N. W. 892, we commented on the fact that a principal is bound by the acts of his agent within the limits of the apparent scope of his authority and that the scope of an agent's authority is usually a question for the jury. Under the record as presented in the instant case we hold that the question was properly submitted to the jury.

IV. Complaint is made of the admission of testimony of similar statements made by appellant's agent Price to Arnold Smith, appellee's neighbor, in negotiating a contract with him to plant appellant's hybrid seed corn. We think the court correctly limited and explained the purpose of the testimony stating it was not to be considered as evidence of the fact that any such representations were made to appellee. Later it explained the testimony was received as bearing on the question of design or plan on appellant's part. There was no error in admitting this testimony.

V. Appellant assigns as error the admission of testimony as to the yield obtained that season from the planting of other varieties of hybrid seed corn upon land in the neighborhood comparable to appellee's land. The evidence was competent as bearing on the truth or falsity of the alleged representations as to the productive quality of appellant's seed, compared to

that of other kinds of hybrid seed corn and as furnishing some evidence as to what the yield might have been had appellant's seed corn been as represented.

VI. The trial court gave the usual instruction placing upon appellee the burden of establishing his case by a preponderance of the evidence. In a later instruction the jury was advised that fraud is never presumed but must be proved by evidence that is clear, satisfactory and convincing. Appellant contends these two instructions were confusing and erroneous. The contention is unsound.

We are mindful of the fact that there would be a difference between a *mere* preponderance of evidence and a *clear and satisfactory* preponderance. See language in Bixby v. Carskaddon, 55 Iowa 533, 535, 8 N. W. 354. But the later instruction here referred to the *character or nature of the evidence,* not to the *degree of* preponderance.

The jury was first given the general rule applicable to all the issues upon which the appellee had the burden. These included not only fraud, but also reliance by appellee upon the representations, the resulting damage and its amount. The jury was then in effect admonished that the evidence to establish the *fraud* must, in order to preponderate, be clear, satisfactory and convincing in character. This proposition, couched in varying language, is frequently said to be based on the necessity of overcoming the general and reasonable presumption in favor of honesty. See text 37 C. J. S., Fraud, section 114. In other words it does not relate to the *quantum* of proof required but rather to the kind of evidence necessary to constitute a preponderance.

However, if there is a conflict as claimed by the appellant he is in no position to complain. There can be no question that instruction No. 5 correctly states the rule of law relative to the necessity of the appellee proving his case by a preponderance of evidence. Instruction No. 6, which states that the required proof of fraud must be clear, convincing and satisfactory places an additional burden on appellee of which the appellant cannot justly complain. In the case of Harvey v. Phillips, 193 Iowa 231, 233, 186 N. W. 910, 911, we stated:

"Generally, fraud is not presumed, and ordinarily, in a civil action, only a preponderance of the evidence is required; but still, to establish the evidentiary facts of bad faith, the proof must be clear, satisfactory, and convincing. Ley v. Metropolitan Life Ins. Co., 120 Iowa 203, 209; Severson v. Kock, 159 Iowa 343, 347; * * *."

We hold there was no reversible error under this assignment. We have examined all the other errors urged but find those that we have not commented on do not require our further consideration. The judgment should be and is affirmed.—Affirmed.

SMITH, C. J., and HALE, GARFIELD, and HAYS, JJ., concur.

OLIVER and MULRONEY, JJ., concur in result.

BLISS and MANTZ, JJ., dissent.