## FIRST ACCEPTANCE CORP. v. KENNEDY.

### No. 14379.

United States Court of Appeals Eighth Circuit.

March 6, 1952.

Louis Sachs, Minneapolis, Minn. (Bryant & Bryant, Mason City, Iowa, on the brief), for appellant.

E. R. Boyle, Clear Lake, Iowa, and R. F. Clough, Mason City, Iowa (R. E. Clough, Mason City, Iowa, and Louis Schuler, Clear Lake, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

In August 1948 the appellee, Kennedy, a resident of Iowa, as purchaser, and the United States Air Conditioning Corporation, engaged in business in Minneapolis, Minnesota, as seller, entered into a contract for the air conditioning of Kennedy's onion storage warehouse on his farm in Iowa. The contract entitled "Conditional Sales Contract" obligated the seller to manufacture and deliver to the purchaser certain air conditioning equipment known by the seller's trade name as a Refrig-o-Miser, to furnish the plans and specifications of the Refrig-o-Miser and the necessary air ducts and vents in the warehouse, and to supervise the complete installation of all equipment for the consideration of $8,300, of which $2,800 in cash was paid by the purchaser on the acceptance of his order and the balance of $5,500 became due and payable on May 1, 1949. After the delivery and installation of the equipment called for by the contract the United States Air Conditioning Corporation assigned all its right, title, and interest in the contract to the appellant, First Acceptance Corporation, also engaged in business in Minneapolis, Minnesota. On the refusal of Kennedy to pay the balance of the purchase price stipulated in the contract when it became due, the First Acceptance Corporation brought this action in the United States District Court in Iowa. The defense was that the contract had been procured by the fraud of the agent of the seller. This appeal is from the judgment entered on a jury verdict in favor of Kennedy.

At the conclusion of all the evidence, the appellant moved the trial court for a directed verdict on the ground, among others, that there was no substantial evidence to show that the conditional sales contract was

procured by the fraudulent representations of the agent of the United States Air Conditioning Corporation. The motion was denied, the court stating that under the evidence the only issue for the jury was the alleged fraud in the procurement of the contract.

Neither party excepted to the court's statement or to its charge to the jury. Nor did either party request of the court the submission of any other issue although in the course of the trial others had been raised. Within due time after the reception of the jury's verdict, the appellant moved for judgment in its favor notwithstanding the verdict or, in the alternative, for a new trial, repeating its contention that there was no substantial evidence to take the question of fraud to the jury. The motion was denied.

█ Since the jury has returned a general verdict in favor of appellee, we must, in considering the question of the sufficiency of the evidence to sustain the verdict, take that view of the evidence which is most favorable to the prevailing party, accepting as established all facts which the evidence reasonably tended to prove and giving to the prevailing party the benefit of all inferences which may reasonably be drawn from the evidence.

The appellee, Kennedy, is a commercial grower of vegetables of more than 40 years experience. In particular, he is revealed by the evidence as an expert in the production and storage of onions in large quantities. Over the years he had devoted from 50 to 250 acres annually in the production of onions of the commercial storage type. In the fall of 1948, which is the critical time here, he harvested 75 acres of onions of which approximately 1000 tons were stored in the warehouse in which the air conditioning system was installed. The onions of the type grown by appellee were usually harvested in late August or early September and held in storage until March of the following year. The successful storage of onions for the period between harvest and marketing requires that they be kept both cool and dry. Prior to the fall of 1948 onions were stored and marketed in sacks containing about 60 pounds. The sacks of onions were stored on shelves in the grower's warehouse. In the industry as early as 1947 onions were harvested by mechanical means, the machines digging the onions, cutting off their tops, running them into sacks, and depositing the sacks on the ground in the fields. In 1948 Kennedy decided to abandon the use of sacks and to substitute in their stead pallets which are wooden crates four feet long by four feet wide and four feet deep, each holding approximately one ton of onions. The pallets were carried on trucks and the onions thrown into them directly from the harvesting machine. Thereafter the pallets were hauled to the warehouse where they were stacked by fork trucks. The purpose of this system was to reduce the cost of harvesting and storage.

This use of pallets was a radical innovation in the harvesting and storage of onions. The evidence is undisputed that it had not been tried before in the industry. There was some doubt among growers that it could be employed without damage to the onions. The appellee described it as a revolutionary experiment. He knew that the air conditioning equipment in use in his warehouse in which he proposed to store the onions in pallets would be inadequate, and that he was confronted with a new problem in the safe storage of onions.

Early in the spring of 1948 a salesman of the United States Air Conditioning Corporation called on the appellee to interest him in the air conditioning system manufactured by the corporation. The salesman advised appellee that a Mr. Teigen, an employee of the corporation, was an outstanding expert in the air conditioning field and arranged for appellee to grant Teigen an interview.

Teigen appeared at appellee's farm on March 2, 1948. He was informed by the appellee of the proposed innovation in the handling and storage of onions. Both Teigen and appellee were aware that the use of pallets in the manner described presented a new problem in onion storage. Teigen advised the appellee of his long experience in the air conditioning field, and appellee accepted him as an expert which he said in his testimony Teigen "undoubted-

ly was." The parties discussed in detail the problem with which they were confronted. Teigen inspected the warehouse to be used in the pallet storage, inquired concerning its construction, and inspected the pallets which were then being constructed. On his first visit Teigen spent a day and an evening on the premises and made a tentative sketch of a proposed pallet arrangement and air conditioning system for the warehouse. He informed appellee, however, that further study would be required to make sure that he was right in what was required for the success of the experiment. Several meetings and discussions between Teigen and appellee followed the original interview. Appellee on Teigen's suggestion inspected two other vegetable storage warehouses in which Teigen had designed the air conditioning in use. Appellee also visited Minneapolis to inspect the factory of the corporation and to satisfy himself concerning its facilities.

While at the plant appellee signed the original order for the system designed by Teigen. He was informed that the corporation had gone into the matter very thoroughly, that the proposed installation would be efficient, that it would do the job, that Teigen had put a great deal of thought on the matter, and that he had the right answer. In many of the negotiations between the parties there was present one of appellee's sons, a university graduate in mechanical engineering, associated with his father in the business. And on occasions another son, then a university student in agricultural engineering, was present.

The plans and specifications proposed by Teigen required the construction of an addition to the warehouse to house the equipment and machinery constituting a Refrig-o-Miser and the construction of air ducts and vents in the warehouse. This construction was designed by Teigen, done at the expense of appellee, and under Teigen's supervision, as was also the installation of the Refrig-o-Miser equipment. The evidence on behalf of appellee, which for present purposes we must accept, is that the onions when harvested were firm and in a dry condition, that the pallets, approximately 1000 in number, were placed in the warehouse as directed by Teigen, and that the system designed by Teigen never operated efficiently. The onions on the sides of the pallets were kept in good condition, but in the center of the pallets the onions heated and deteriorated rapidly so that early in December appellee began salvage operations. The damaged onions were removed and those beyond salvage were thrown away. Some were dried by use of the Refrig-o-Miser equipment. Appellee sustained heavy damage in the loss of the onions.

Qualified experts testified that the air conditioning system designed by Teigen was installed in the warehouse in accordance with accepted practice in the industry. There was also undisputed evidence that different vegetables require different treatment for successful storage.

The applicable law of Iowa is summarized in paragraph 9 of the court's charge to the jury.

"In order to establish the defense of fraud, the defendant, Sam Kennedy, must establish by the greater weight or preponderance of the evidence the following propositions:

"1. That F. A. Teigen, acting for and in behalf of the United States Air Conditioning Corporation, made the claimed representations to Sam Kennedy.

"2. That such representations were made as statements of fact and not as expressions of opinion.

"3. That such representations were material.

"4. That such representations were false.

"5. That F. A. Teigen either actually knew that the representations were false or, without having personal knowledge of their truth [and] or falsity, he made them in such an absolute and unqualified manner as to justify the conclusion on the part of Sam Kennedy that he (F. A. Teigen) had personal knowledge as to their truth.

"6. That the representations were made by F. A. Teigen to Sam Kennedy with the intent that he (Sam Kennedy) should act in reliance thereon.

"7. That Sam Kennedy, acting in reliance thereon, did enter into the contract arrangements for the purchase of the equipment and sign the conditional sale contract in question.

"8. That Sam Kennedy sustained substantial damage as a result of his acting in reliance upon the said representations.

"If the defendant, Sam Kennedy, has established each and all of said propositions numbered 1 to 8 by the greater weight or preponderance of the evidence, he has established the defense of fraud and your verdict should be for him. If you fail to find that the defendant, Sam Kennedy, has so established each and all of said propositions numbered 1 to 8, your verdict should be for the plaintiff. If your verdict is for the plaintiff, its recovery will be in the amount claimed by it."

And on the question whether the representations of Teigen were made as statements of fact or as expressions of opinion the court said:

"One of the necessary elements of fraud is that the representations made must be those of fact as distinguished from expressions of opinion. Whether a certain representation is an expression of opinion or a statement of fact depends upon the facts and conditions in each case.

"* * * In determining that question you may and should consider the subject of the transaction in its entirety: the knowledge, lack of knowledge, means of knowledge and comparative knowledge and experience of Sam Kennedy and F. A. Teigen in connection therewith; the nature and character of their relations; the manner and the conditions under which the claimed representations were made; and all of the facts and circumstances, [if] as shown by the evidence, tending to indicate whether F. A. Teigen by such representations was making an affirmation of fact or was merely expressing an opinion."

We have no reason to question the correctness of the court's instructions as to the applicable law of Iowa if the evidence was sufficient to take the issue of fraud to the jury. The plaintiff challenged the sufficiency of the evidence to present a jury question by making a motion for a directed verdict. The question we must decide is whether there was a sufficient evidentiary basis for a finding that Teigen's statements that he had carefully studied the problem for solution and that the system of air conditioning as designed by him, when made and installed, "would do the job" and keep the onions in safe condition during the storage period, amounted to false statements of fact upon which Kennedy could justifiably rely, rather than expressions of opinion as to how the system would perform as a means of preserving onions stored as Kennedy proposed to store them. We think the answer to that question must be in the negative, and that appellee, Kennedy, must be charged with the knowledge that Teigen was speaking his opinion concerning the solution of a problem in the storage of onions that had never theretofore been solved. It is clear that the success of the system depended upon the characteristics of onions as well as upon the air conditioning installation. All that the evidence shows is that a qualified expert in air conditioning and a qualified expert in the handling and storage of onions devised a method for onion storage based upon their combined past experiences and put it in operation in the belief that it would be successful. In the circumstances neither could have known with certainty the result of the experiment. Neither could express more than an opinion concerning it, a fact which Kennedy, an expert in the handling of onions, must have known. That the system installed in the warehouse failed is not alone sufficient to support an inference of fraud. Fraud is never presumed. The evidence in this record is not of the clear and convincing character, Hall v. Crow, 240 Iowa 81, 34 N.W.2d 195, 201, required to establish it.

Where the evidence of a party upon whom rests the burden of proof is equally consistent with two conflicting hypotheses, it will not support a judgment in his favor. Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203, 205–206, and cases cited. In the instant case the evidence, viewed in the light most favorable to the defendant, is more consistent with the the-

ory that Teigen's statements were the honest although mistaken expressions of opinion of a man familiar with air conditioning but not with the storage of onions, than with the hypothesis that the statements amounted to false representations of fact upon which a claim of fraud could justifiably be based. We think that a jury may not convert a prediction as to how a nonexistent air conditioning installation will operate to preserve onions into a fraudulent representation as to a material fact. Compare Gaar, Scott & Co. v. Halverson, 128 Iowa 603, 105 N.W. 108.

The conclusion we have reached makes unnecessary the consideration of other grounds for reversal of the judgment assigned by appellant.

Reversed and remanded to the District Court with directions to enter judgment in favor of appellant.